ELLEN SUE KATZ, AZ Bar. No. 012214
BRENDA MUÑOZ FURNISH, AZ Bar No. 027280
ORIEN NELSON, AZ Bar No. 032861
WILLIAM E. MORRIS INSTITUTE FOR JUSTICE
3707 North Seventh Street, Suite 300
Phoenix, Arizona 85014
(602) 252-3432
eskatz@qwestoffice.net
bmfurnish@qwestoffice.net
onelson@qwestoffice.net

DANIEL J. ADELMAN AZ Bar No. 011368
ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST
514 West Roosevelt Street
Phoenix, Arizona 85003
(602) 258-8850
danny@aclpi.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Poder in Action, an Arizona nonprofit corporation; Arizona Dream Act Coalition. an Arizona nonprofit corporation; and Aurora Galan Mejia, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>The City of Phoenix, a municipal corporation,<br><br>Defendant. | **No.**<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

**PRELIMINARY STATEMENT**

1. Plaintiffs bring this lawsuit to stop the City of Phoenix from imposing restrictions based on immigration status for persons to participate in the City's COVID-19 emergency housing program to prevent evictions and homelessness. The program's emergency housing funds are to offset certain economic harms suffered by persons who live in the City of Phoenix and to assist with payments for residential rental, mortgage or utility expenses. The funds are for persons who need assistance to pay their designated

1

vendors, and payments will go directly to landlords, mortgage companies and utilities. Plaintiffs seek declaratory and injunctive relief to enjoin Defendant from continuing to restrict participation in this program and eligibility for these funds based on immigration status.

2. On March 27, 2020, in response to an unprecedented worldwide pandemic that has disrupted every aspect of the economy and everyday life, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law. Pub.L. No. 116-136, 134 Stat. 281 (2020). In the CARES Act, Congress established the Coronavirus Relief Fund and appropriated $150 billion to the Fund. The Fund is administered by the U.S. Department of Treasury.

3. Under a statutory formula based on population, approximately $293 million was allocated to the City of Phoenix under the Coronavirus Relief Fund. The City of Phoenix decided to use approximately $25 million of the Coronavirus Relief Fund to assist renters and homeowners to be able to stay in their homes.

4. The City restricts which immigrants can participate in the program. Only an immigrant applicant who meets the qualified immigration status requirements as defined in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA") is eligible to participate in the program. There are many immigrants who live in the City who are in need of the emergency housing assistance but do not meet these requirements including Deferred Action for Childhood Arrivals ("DACA") recipients, persons with Temporary Protected Status, asylum applicants, U-Visa holders who are victims of serious crimes and others.

5. Congress in establishing the CARES Act Coronavirus Relief Fund did not incorporate any limitations for the use of these funds based on immigration status. When Congress wanted to limit grants to local governments based on immigration status, it has done so explicitly, including in other sections of the CARES Act.

6. Congress intended to provide resources to local governments to address the economic and health hardships brought on by the COVID-19 pandemic and to meet the

needs of their communities.  The City's policy undermines these goals.

7. The City has unlawfully restricted access to participation in the program and access to the emergency funds in violation of federal law.  As a result of the City's unlawful restriction, immigrants who otherwise would qualify to participate in the program may lose their homes, be evicted, or have their utilities shut off.

8. For all these reasons and those discussed below, the Court should declare the City's immigrant eligibility requirements for the emergency housing assistance under the CARES Act unlawful and enjoin the requirements.

## JURISDICTION AND VENUE

9. The Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States; and

   b. 28 U.S.C. §§ 1343(a)(3) and (4), which gives district courts original jurisdiction over suits to redress the deprivation under state law of any rights, privileges, or immunities guaranteed by the Constitution or by acts of Congress.

10. Plaintiffs' action for declaratory, injunctive relief, and other appropriate relief is authorized by 28 U.S.C. §§ 1651, 2201 and 2202.

11. Venue is proper under 28 U.S.C § 1391(b).

## PARTIES

12. Plaintiff Poder in Action ("Poder") is a grassroots nonprofit organization based in Phoenix.  Poder's mission is to build power with persons impacted by injustice through leadership development, civic engagement and policy advocacy. Poder's members include immigrants and citizen children who live in mixed status households. Poder works in neighborhoods with families for social justice so that all persons can have a healthy and safe quality of life.  Poder advocates at the state and local level for policy changes to improve the lives of immigrants.  Poder advocates with the City of Phoenix to

ensure that the budget reaches those most in need and that communities of color and immigrant communities receive the resources they are entitled to receive. Poder closely followed the City's decision to prohibit some immigrants from eligibility for the CARES Act emergency funds. In response, Poder joined with other community groups and individuals to raise private donations for the Arizona Undocumented Workers Relief Fund. The fund will provide essential support for basic needs, including rent for families not eligible for the federal funds. In taking these actions, Poder diverted resources away from its planned activities to obtain contributions to assist members harmed by the City's policies. Those planned activities included assisting families to get technology into their homes that could be used for volunteering and school access. Poder also conducted a survey of its members and found that the number one bill members were worried about paying was their rent or mortgage. Poder members have been financially impacted as a result of the COVID-19 pandemic and would apply for the City's funds if they were eligible.

13. Plaintiff Arizona Dream Act Coalition ("ADAC") is an immigrant youth led nonprofit organization whose mission is to promote educational success of immigrant youth, increase civic engagement, integrate immigrants into Arizona's economy to the fullest extent possible and to advocate for immigrant rights. Its members include DACA recipients and other immigrants, including persons living in mixed status households. Most of its members live in the City of Phoenix. ADAC monitors local policies to ensure that immigrants are not left out of receiving City assistance and resources. In response to the City limiting immigrant eligibility for the emergency CARES Act housing funds, ADAC had to divert its resources and work to establish the Arizona Undocumented Workers Relief Fund, obtain donations for the fund, talk to persons in need of the funds and distribute the funds. ADAC concentrated on fundraising for the relief funds and diverted its resources from fundraising for and distributing private scholarships to immigrant youth who otherwise do not qualify for state or federal financial aid. ADAC had to prioritize rent assistance over the scholarships because of the pandemic. The other

planned activities ADAC diverted resources from included helping DACA recipients renew their DACA applications and putting on "know your rights" sessions. Many ADAC members have been financially impacted as a result of the COVID-19 pandemic and would have applied for the City's emergency housing funds if they were eligible.

14. Plaintiff Aurora Galan Mejia lives in the City of Phoenix and is a DACA recipient. She owns her home and has a mortgage and utilities in her name. Her income was adversely impacted by COVID-19 when she lost her job and she wants to apply to participate in the program. As a DACA recipient, she does not meet the City of Phoenix's immigration requirement.

15. Defendant City of Phoenix is a municipal corporation, organized under the laws of Arizona.

## CLASS ALLEGATIONS

16. Plaintiffs bring this suit both individually and on behalf of a citywide class of persons similarly situated pursuant to Fed.R.Civ.P. 23(a) and (b)(2). The class is composed of all immigrants who live in the City of Phoenix and are otherwise eligible for participation in the program but have been or will be improperly denied eligibility to qualify for and obtain the vendor payments because of the City's policy of restricting immigrant eligibility to those immigrants who are "qualified" immigrants under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA").

17. The prerequisite of Fed.R.Civ.P. 23(a) are met in that:
    a. The class is so numerous that joining all members is impracticable. The exact size of the class is unknown but includes thousands of persons residing in the City of Phoenix. The class members are geographically dispersed throughout the City, have limited financial resources, and are unlikely to institute individual actions.
    b. There are issues of fact and law that are common to all members of the class, including whether the City's immigration restriction on

eligibility for participation in the program is lawful.

  c. The claims of the named Plaintiffs are typical of the claims of the class they represent; and

  d. Plaintiffs and their counsel will fairly and adequately protect the interests of the class.

18. The requisites of Fed.R.Civ.P. 23(b) are met in that the Defendant has acted or refused to act on grounds generally applicable to all members of the class, making final declaratory and injunctive relief appropriate with respect to the class as a whole.

## THE CITY'S RESTRICTION ON ELIGIBILITY BASED ON IMMIGRATION STATUS

19. On May 20, 2020, the Council of the City of Phoenix passed ordinance S-46644, that authorized the City to enter into a contract not to exceed $25.7 million with the Arizona Community Action Association, doing business as Wildfire, to provide "Covid-19 emergency utility, rent and mortgage assistance for Phoenix residents, including vulnerable residents, impacted by the COVID-19 national pandemic." Wildfire is a well-known community nonprofit organization.

20. On June 12, 2020, the City and Wildfire signed the "COVID-19 Emergency Utility, Rental and Mortgage Assistance Agreement." The contract acknowledges that the City was allocated Coronavirus Relief Fund grant funds under the CARES Act to assist the City in "navigating" the impact of the COVID-19 outbreak. The agreement is for the "purpose of creating a temporary program to assist Phoenix residents affected by the COVID-19 emergency" by providing funds to vendors for utility bills, mortgage and rental obligations. The contract is attached to this complaint as Exhibit 1.

21. In the contract's Exhibit A- Scope of Work, the "[f]unding will be used to provide emergency utility, rent and mortgage assistance to Phoenix households . . . in an effort to mitigate the impacts of COVID-19." Under section 3.1, eligible participants must be able to "provide proof of qualifying legal status as defined in the Scope of Work-Attachment A-General Program Summary."

22. In the contract's Scope of Work-Attachment A-COVID-19 Emergency Assistance General Program Summary there is a heading "VERIFICATION OF QUALIFIED LEGAL STATUS IN THE U.S. PER THE PERSONAL RESPONSIBILITY AND WORK OPPORTUNITY RECONCILIATION ACT (PRWORA)." (Emphasis in original). The document requires that the "[p]rimary applicant must be able to verify identity." The document also requires that the "[p]rimary applicant provide proof of qualified legal status in the U.S. **See Attachment 4 for acceptable documentation**." (Emphasis in original). The primary applicant is the household member who has the rental, mortgage or utility bill in their name. The requirement of qualified legal status is not an eligibility requirement in the relevant portions of the CARES Act Coronavirus Relief Fund.

23. In the contract's Exhibit A-Scope of Work, for "CRISIS:" is the requirement that the "[h]ousehold must be financially impacted by the COVID-19 national pandemic."

24. In the contract's Exhibit A-Scope of Work, under section 3.2, additional funds are provided for eligible participants who are refugees or asylees. These persons must show qualifying legal status in the U.S. as defined in the Scope of Work-Attachment B. Attachment B requires verification of legal status under PRWORA and the primary applicant must provide proof of refugee or asylee qualified legal status in the U.S. with reference to Attachment 4 for acceptable documentation. The household must also be financially impacted by the COVID-19 national pandemic.

25. There are contradictory documents required in the contract's Exhibit A-Scope of Work, Attachments A and B, Attachment 5-Case File Order. Those documents list the documents required for the case file and include: "3. Citizenship verification of the primary applicant." This requirement may be from the Coronavirus Relief Fund Proposed Strategic Plan, Version 2 PowerPoint presented at the May 5, 2020, City of Phoenix Policy Meeting where under "Eligibility Determination-Residential" it is noted that "Federal/State Required Proof of Citizenship" is one of the four requirements.

26. Pursuant to the contract, unless an immigrant applicant meets the qualified immigration status requirements, the household is not eligible to participate in the program and no emergency will be sent to their vendors. There are many immigrants living in the City of Phoenix who do not meet these requirements including DACA recipients, persons with Temporary Protected Status, asylum applicants, U-Visa holders who are victims of serious crimes, and others.

27. The restrictions on immigrant eligibility in the contract between Wildfire and the City of Phoenix are included verbatim in the subcontracts between Wildfire and the non-profit organizations that Wildfire contracts with to interview applicants, approve applications for the emergency housing assistance, and disburse the housing and utility payments to the vendors. A form contract used by Wildfire to contract with the subcontractor nonprofits is attached as Exhibit 2.

28. The Phoenix metropolitan area is home to many immigrants. As the following numbers show, thousands of immigrants living in Phoenix are adversely affected by the City's policy and overwhelmingly those persons harmed are members of the Latinx community. According to the United States Census, 42.6% of Phoenix residents identify as Latinx and 19.5% of Phoenix residents were foreign born. United States Census, Quickfacts: Phoenix, Arizona. https://www.census.gov/quickfacts/fact/table/phoenixcityarizona/INC110218. In addition, there are over 24,000 DACA recipients in Arizona. American Immigration Council, *Immigrants in Arizona* (2020), https://www.americanimmigrationcouncil.org/sites/default/files/research/immigrants_in_arizona.pdf. In 2017, the Pew Research Center found that 94% of DACA recipients were from Mexico and Central America. Gustavo Lopez and Jens Manuel Krogstad, Pew Research Center, *Key Facts about Unauthorized Immigrants Enrolled in DACA* (Sept. 25, 2017), https://www.pewresearch.org/fact-tank/2017/09/25/key-facts-about-unauthorized-immigrants-enrolled-in-daca/. Approximately 210,000 undocumented immigrants lived in the Phoenix-Mesa-Scottsdale area in 2016. Jeffry S. Passell and D'Vera Cohn, Pew Research Center, *20 Metro Areas Are Home to Six-in-Ten Unauthorized Immigrants in the U.S.*

(Mar.11, 2019), https://www.pewresearch.org/fact-tank/2019/03/11/us-metro-areas-unauthorized-immigrants/. The largest group of undocumented immigrants in Phoenix identify as Latinx. It is estimated that 87% of the undocumented immigrants residing in Maricopa County were born in Mexico or Central America. Migrant Policy Initiative, *Profile of the Unauthorized Population: Maricopa County, AZ,* https://www.migrationpolicy.org/data/unauthorized-immigrant-population/county/4013.

## LEGAL AND STATUTORY FRAMEWORK
### The Coronavirus Relief Fund Imposes No Eligibility Restriction Based on Immigration Status

29. Section 5001 of the Cares Act added a new section 601 to the Social Security Act, the Coronavirus Relief Fund. Section 601(d) provides federal funds to state and local governments, such as the City of Phoenix, to cover costs that:

(1) are "necessary expenditures incurred related to the public health emergency with respect to the Coronavirus Disease 2019 (COVID-19);"

(2) were not accounted for in the City's most recently approved budget; and

(3) were incurred between March 1-December 30, 2020.

The U.S. Treasury Department issued *Coronavirus Relief Fund Guidance for State, Territorial, Local and Tribal Government* (updated on June 30, 2020), https://home.treasury.gov/systems/files/136/Coronavirus-Relief-Fund-Guidance-for-State-Territorial-Local-andTribalGovernments.pdf, and *Coronavirus Relief fund Frequently Asked Questions* ("FAQs") (updated on July 8, 2020) concerning the use of these funds, https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Frequently-Asked-Questions.pdf. One question on page 4 of the FAQs specifically refers to whether the grant funds may be used "to prevent eviction and assist in preventing homelessness." The response provided is "yes," assuming these funds are incurred due to the public health emergency and the other requirements in section 601 of the Social Security Act are

satisfied.

30. Neither the plain text of section 5001 of the CARES Act, the Treasury guidance nor the FAQs restrict the use of these funds based on immigration status. When Congress wanted to restrict eligibility for funds in the CARES Act, it did so specifically. A decision last month in the district court of California supports this position. *Eloy Ortiz Oakley, et al. v Betsy DeVos, et al,* No. 20 CV 03215 YGR, 2020 WL 3268661 (N.D. Cal. June 17, 2020) is a challenge to the Secretary of Education's imposition of restrictions on education funds provided in the CARES Act. The court enjoined the Secretary, in part, because the Secretary's restrictions were contrary to the plain meaning of the Act. The court noted that there were no restrictions on eligibility for the educational funds in the Act based on immigration status, although eligibility restrictions were included in another part of the Act, section 6428, concerning the individuals who could receive recovery or stimulus rebates. *Id*. at * 8-9. Just as in *Oakley*, the CARES Act Coronavirus Relief Fund has no restrictions on eligibility for a state or local eviction or homeless prevention funds.

31. No federal law limits the eligibility for these services based on immigration status for rental, mortgage and utility assistance vendor payments under the CARES Act to provide emergency relief in response to the COVID-19 pandemic.

**The Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") Does Not Apply to the Coronavirus Relief Fund**

32. Despite the plain wording in the CARES Act Coronavirus Relief Fund, the City apparently relies on PRWORA, to impose an immigration status eligibility requirement for participation in the program and eligibility for these vendor payments.

33. Title IV of PRWORA, limits eligibility for certain "federal public benefits" to specified immigrants referred to as "qualified" immigrants. 8 U.S.C. § 1611(a). Qualified immigrants include lawful permanent residents, refugees, asylees and other immigrants admitted into the county for humanitarian reasons. 8 U.S.C. § 1641. PRWORA restricts immigrant eligibility for certain "federal public benefits." 8 U.S.C.

§1611(c). The definition does not include all federal programs and there are several exceptions to the definition. 8 U.S.C. §§ 1611 (b), (c)(2).

34. PRWORA does not apply to the CARES Act Coronavirus Relief Fund emergency assistance to prevent eviction and homelessness. Similar to the HEERF funds discussed by the court in *Oakley*, the Coronavirus Relief Fund funding stream is part of a later passed more specific law intended to allow states and localities to address the pandemic flexibly. Even if PRWORA's provisions could apply to this funding stream, the Coronavirus Relief Fund is akin to a "block grant" that falls outside the definition of "federal public benefit."

35. When a program does not have specific income, resource or age limits, the funds are not targeted to specific "eligibility units" and, therefore, under longstanding federal agency interpretation are not a federal public benefit under PRWORA. *See* Office of the Secretary, Health and Human Services ("HHS"), *Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit,"* ("*HHS Interpretation of Federal Public Benefit*") 63 Fed. Reg. 41,658-61 (Aug. 4, 1998). For this reason, "benefits that are generally targeted to communities or specified sectors of the population (e.g. people with particular physical conditions . . . [or] general age groups such as the youth or the elderly)" would not be included. *Id.* HHS established that "unless the authorizing statutes require that the characteristics . . . form the bases for the denial of services or benefits, these are not benefits that go to the 'eligibility units'" and are not "federal public benefits" for the purpose of PRWORA. *Id* at 41, 659.

> For example, in order for a program to be determined to provide benefits to "eligibility units" the authorizing statute must be interpreted to **mandate ineligibility** for individuals, households, or families that do not meet certain criteria, such as a specified income level or specified age. (Emphasis added).

*Id.*

36. There is no such mandate in the relevant section of the CARES Act and,

11

therefore, even if PRWORA could apply, the Coronavirus Relief Fund would not be considered "federal public benefits" within the meaning of PRWORA.

37. HHS similarly explained that "federal public benefits" does not include benefits targeted to certain *communities* or *sectors of the population* rather than particular eligibility units (such as an individual, household or family "unit" that met specified qualifications). *Id*.

38. For example, the Maternal and Child Health Services Block Grant, *see* 42 U.S.C. § 701, which makes access to health care services for mothers and children available to low-income women and families is "a benefit targeted to certain populations based on their characteristic," rather than a benefit intended for individual eligibility units and therefore is "*not* a 'Federal public benefit.'" *Id*. (emphasis in original).[1]

39. Here, the Coronavirus Relief Fund was established in response to an unprecedented national emergency and public health crisis created by the COVID-19 pandemic. These funds are similar to other federally funded programs exempt from Section 1611's restrictions, such as programs meant to address public health, medical emergencies, disaster relief, or "otherwise necessary for the protection of life or safety." These are funds to address the economic and public health consequences of the COVID-19 pandemic. These funds will enable persons living in the City of Phoenix to remain in their homes, by paying their rent or mortgage, and complying with stay-at-home orders and guidance. Those living in the City are all safer if more persons can remain in their homes during this pandemic.[2]

---

[1] Similarly, HHS has recognized that a program may be intended to benefit the community and not only individuals. In its guidance, HHS gave the example of weatherization of multi-unit buildings. "These funds would not be considered a 'Federal public benefit' since the eligibility of individuals . . . is not considered in determining whether such funds will be used to improve the building." HHS Interpretation of Federal Public Benefit, at 41,660.

[2] In *Oakley,* the court also rejected the Secretary's argument that the CARES Act educational funds came within the federal public benefit definition in 8 U.S.C. § 1611. 2020 WL 3268661 at * 13-16.

## Exception for Short-Term, Non-Cash, In-Kind Emergency Disaster Relief

40. Even if the Coronavirus funding stream fell within the definition of federal public benefit in PRWORA, (which it does not), the rental, mortgage and utility assistance would be exempt from restriction as short-term, in-kind emergency disaster relief under 8 U.S.C. § 1611(b)(1)(B). The restriction on providing Federal public benefits to certain immigrants is found in 8 U.S.C. § 1611(a). However, subsection (b) provides several important exceptions to this prohibition, with the most relevant one for the funds at issue being the exception for "[s]hort-term, non-cash, in-kind emergency disaster relief." 8 U.S.C. § 1611(b)(1)(B). The funds at issue fit squarely within this exception.[3]

41. First, the funds are in response to the COVID-19 pandemic. While there is nothing in the statutory provision that limits the application of this exception to a disaster that has received a particular type of formal declaration or recognition, both Governor Ducey on March 11, 2020 and the President on March 13, 2020, declared the COVID-19 pandemic an emergency. Second, the City intends to deliver the much-needed funds "in-kind." The funds are for persons who need assistance to pay the designated vendors and the funds will go to the vendors directly. The applicants will not receive any cash payments. Third, the rental, mortgage, and utility payments are one-time payments and thus are "short-term" emergency funds.

42. Both the Internal Revenue Code, 26 U.S.C. §61(a), and major federal benefit public programs rely on the distinction between cash and non-cash assistance. For example, the Supplemental Nutrition Assistance Program (formerly food stamps) excludes from income eligibility calculations "any gain or benefit which is not in the

---

[3] The Attorney General issued a final specification regarding programs exempt under section (b)(1)(D). *Final Specification of Community Programs Necessary for the Protection of Life or Safety Under Welfare Reform Legislation,* 66 Fed. Reg. 3613-02, 2001 WL 31044(FR)(Jan. 16, 2001). The criteria included "(g) Any other programs, services, or assistance for the protection of life or safety." *Id.* at 3616.

form of money payable directly to a household." 7 U.S.C. § 2014(d)(1); see 7 C.F.R. § 273.9(c)(1).

43. Under the plain wording of 8 U.S.C. § 1611(b)(1)(B), short-term, non-cash, in-kind emergency disaster relief such as the City's Coronavirus Relief Fund for emergency housing assistance are not considered federal public benefits and, therefore, are not restricted based on immigration status.

**Exception for Programs Administered by Non-Profits**

44. Even if the Court determines these funds are federal public benefits subject to PRWORA, there is another exception that applies to these funds. An exception to the immigration eligibility verification applies when the funds will be disbursed by nonprofit charitable organizations. 8 U.S.C. § 1642(d) ("a nonprofit charitable organization, in providing a Federal public benefit . . . is not required under this chapter to determine, verify, or otherwise require proof of eligibility for any applicant for such benefits."). This exception is understandable. The community entities taking applications and delivering the emergency housing funds to the vendors will be nonprofits. The federal law does not require (or expect) these groups to make immigration eligibility decisions.

**The City's Policy Has A Disparate Impact on Latinx Persons**

45. Thousands of immigrants living in the City of Phoenix are harmed by the City's policy. Two examples show the negative impact on Latinx persons. First, as of 2016, approximately 210,000 undocumented immigrants lived in the Phoenix-Mesa-Scottsdale metropolitan and approximately 87% identify as Latinx.

46. Second, there are over 24,000 DACA recipients in Arizona and 97% of them are from Mexico and Central America.

47. The City's policy of restricting eligibility to the emergency housing funds based on immigration status has a disparate impact on Latinx persons living in Phoenix.

**DEFENDANT'S POLICY IS PREEMPTED BY FEDERAL LAW**

48. Article VI, clause 2, of the United States Constitution, known as the Supremacy Clause, provides: "This Constitution, and the Laws of the United States

1 which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

49. Pursuant to the Supremacy Clause, federal law preempts state and local regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved to the federal government.

50. The federal government has sole and exclusive power to regulate immigration. The federal government's exclusive power over immigration matters is inherent in the nation's sovereignty, and derives from the U.S. Constitution's grant to the federal government of the power to "establish an uniform Rule of Naturalization," *id.* art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," *id*. art. I, § 8, cl. 3.

51. As part of its immigration power, the federal government has exclusive authority to enact and to enforce regulations concerning which noncitizens may receive which federal public benefits. In contrast, state and local governments have none of these powers.

52. Pursuant to its powers, the federal government has established a comprehensive system of laws, regulations, procedures, and administrative agencies that determine, subject to judicial review, what federal public benefits a noncitizen may be eligible to receive.

53. Congress has delegated to the federal Executive broad discretion over the manner of the execution of the immigration laws, including the manner of their enforcement.

54. The City of Phoenix's policy of imposing an immigration status requirement on the emergency housing funds is preempted by federal law because the CARES Act Coronavirus Relief Fund funding stream does not have such a requirement. Even if PRWORA were to apply to this funding stream, Phoenix's emergency housing program would be exempt under this federal law, because the funds are for short-term, non-cash, in-kind emergency disaster relief. Finally, the City of Phoenix's policy requires

nonprofits to determine immigrant status, which violates 8 U.S.C. § 1642(d)

## DEFENDANT'S POLICY DISCRIMINATES BASED ON NATIONAL ORIGIN UNDER THE FEDERAL FAIR HOUSING ACT

55. The Federal Fair Housing Act, 42 U.S.C. § 3604(a) and (b) ("Act") provide that it is unlawful:

> (a) To refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services, facilities in connection therewith, because of race, color, religion, sex, familial status or national origin.

56. The City of Phoenix has refused to allow immigrants who are not qualified immigrants under PRWORA to participate in the Coronavirus Relief Fund funded emergency housing assistance program. These vendor payments under the program are services covered by the Act.

57. By excluding the immigrants from eligibility for these vendor payments, the City is making their homes unavailable to them.

58. The City's policy has a disparate impact on Latinx persons living in the City and the City has no legitimate non-discriminatory reason for its policy.

## INDIVIDUAL PLAINTIFF FACTUAL ALLEGATIONS

59. Plaintiff Galan Mejia owns her home and is the person named on the mortgage. Her home's utility bills are in her name. Her electricity bill covers both her heat and air conditioning. During the hotter months, her electric bill is approximately double what it is in the cooler months. As a result of the COVID-19 pandemic, Plaintiff's employer had to let her go. She receives state regular unemployment insurance benefits of $240 per week and the additional $600 in federal benefits. The federal benefits are set to expire this week in Arizona. Plaintiff is worried that she will

not be able to keep up with her mortgage and utility payments and may lose her home. She wants to apply for the City's emergency housing funds but did not because she is a DACA recipient and is not an immigrant that the City allows to participate in the program.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Violation of Supremacy Clause; 42 U.S.C. § 1983)

60. Plaintiffs restate and incorporate by reference each of the allegations contained in paragraphs 1-59, above.

61. The Supremacy Clause, Article VI, Clause 2 of the U.S. Constitution provides that federal law preempts state and local law or policy in any area in which Congress expressly or impliedly has reserved exclusive authority or which is constitutionally reserved to the federal government, including where local policy conflicts or interferes with federal law.

62. Defendant's policy that prohibits certain immigrants from participating in the emergency housing assistance program in response to the COVID-19 pandemic and obtaining the emergency housing vendor payments violates the Supremacy Clause.

63. The Supremacy Clause is enforceable by Plaintiffs in this Court pursuant to 28 U.S.C. § 1331 and pursuant to 42 U.S.C. § 1983.

64. The individual Plaintiff and those similarly situated and the communities served by the organizational Plaintiffs are suffering or are in danger of suffering irreparable harm. Plaintiffs have no adequate remedy at law.

### SECOND CLAIM FOR RELIEF

### (Violation of Federal Fair Housing Act)

65. Plaintiffs restate and incorporate by reference each of the allegations contained in paragraphs 1-59, above.

66. Defendant's policy that prohibits certain immigrants from participating in the emergency housing program in response to the COVID-19 pandemic and obtaining

the emergency housing vendor payments denies immigrants the City services and violates the Federal Fair Housing Act ("Act") based on nation origin discrimination, 42 U.S.C. § 3604(b).

67. Defendant's policy that prohibits certain immigrants from participating in the emergency housing program in response to the COVID-19 pandemic and obtaining the emergency housing vendor payments denies immigrants the funds to allow them to stay in their homes and makes housing unavailable based on national origin discrimination in violation of the Act, 42 U.S.C. §3 604(a).

68. The Act is enforceable by Plaintiffs in this Court pursuant to 28 U.S.C. § 1331 and pursuant to 42 U.S.C. § 1983.

69. The individual Plaintiff and those similarly situated and the communities served by the organizational Plaintiffs are suffering or are in danger of suffering irreparable harm. Plaintiffs have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully ask this Court:

A. Certify this case as a class action. The class is defined as all immigrants who live in the City of Phoenix and are otherwise eligible for participation in the program but have been or will be improperly denied eligibility to qualify for and obtain the vendor payments because of the City's policy of restricting immigrant eligibility to those immigrants who are "qualified" immigrants under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA").

B. Issue a declaratory judgment holding that Defendant's policy of restricting immigrant eligibility to participate in the COVID-19 emergency housing assistance program to immigrants who live in the City who are "qualified" immigrants under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996

("PRWORA") is unlawful and invalid and violates the Supremacy Clause and the Federal Fair Housing Act.

C. Grant preliminary and permanent injunctions that prohibit Defendant, its officials, agents, assigns and all persons acting in concert or participating with the City from implementing or enforcing the City's policy and practice of restricting emergency housing assistance to immigrants who live in the City who are "qualified" immigrants under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA").

D. Award Plaintiffs their reasonable attorneys' fees and costs against Defendant pursuant to 42 U.S.C. §§ 1988 and 3613 and any other applicable law.

E. Grant such other relief as may be just and proper.

Respectfully submitted this 20th day of July 2020.

>WILLIAM E. MORRIS INSTITUTE FOR JUSTICE

By /s/Ellen Sue Katz
Ellen Sue Katz
William E. Morris Institute for Justice
3707 North Seventh Street, Suite 300
Phoenix, Arizona 85014

ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST

Daniel J. Adelman
514 West Roosevelt Street
Phoenix, Arizona 85003

Attorneys for Plaintiffs