Cris Meyer, 012262
City Attorney
Les S. Tuskai, 030525
Assistant Chief Counsel
City of Phoenix
200 West Washington Street
13th Floor
Phoenix, Arizona 85003
(602) 262-6761
law.civil.minute.entries@phoenix.gov

Mary R. O'Grady, 011434
Emma J. Cone-Roddy, 034285
OSBORN MALEDON, P.A.
2929 North Central Avenue
21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
mogrady@omlaw.com
econe-roddy@omlaw.com

Attorneys for City of Phoenix

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Poder in Action, an Arizona nonprofit corporation; Arizona Dream Act Coalition, an Arizona nonprofit corporation; and Aurora Galan Mejia, individually and on behalf of others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>The City of Phoenix, a municipal corporation,<br><br>Defendant. | No. CV-20-01429-DWL<br><br>**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

## I.   INTRODUCTION

Congress has deemed that only certain non-citizens are generally eligible to receive federally funded benefits. When local governments such as the City of Phoenix (the "City" or "Phoenix") spend federal funds that Congress appropriates, they are required to comply with the restrictions that Congress has mandated. This is all that happened here: Congress provided the City with funding in response to the global pandemic. The City chose to use some of that federal money to help pay bills for rent, mortgage, and utilities for people affected by the pandemic, and it established eligibility requirements to comply with the relevant federal laws.

Plaintiffs seek an injunction ordering the City to distribute these federally funded benefits in violation of federal law to certain groups of non-citizens who are ineligible for federal public benefits. The City's program complies with federal law, and the Court should deny the request for a preliminary injunction.

## II.   BACKGROUND

In response to the devastating effects of the Coronavirus Disease 2019 ("Coronavirus" or "COVID-19") on health, the economy, and nearly all aspects of life, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") on March 27, 2020. The CARES Act created a variety of programs, provisions, and funds to aid state and local governments, households, and individuals in response to COVID-19. At issue here is one fund that the CARES Act created, the "Coronavirus Relief Fund." CARES Act § 5001. The Coronavirus Relief Fund included $150,000,000,000 that Congress appropriated to the United States Department of the Treasury ("DOT" or "Treasury"). *Id.* § 5001(a)(1). Congress directed Treasury to disburse this money to state and local governments pursuant to a formula. It also permitted state and local governments to use these funds to cover costs that:

> (1) are necessary expenditures incurred due to the public health emergency with respect to the Coronavirus Disease 2019 (COVID-19);

  (2) were not accounted for in the budget most recently approved as of the date of enactment of this section for the State or government; and
  (3) were incurred during the period that begins on March 1, 2020, and ends on December 30, 2020.

*Id.* § 5001(d).

Treasury allocated approximately $293 million from the Coronavirus Relief Fund to the City of Phoenix (the "City").

  The City then chose, as a policy matter, to use approximately $25.7 million of these funds to create a program to aid renters and homeowners who were impacted by the COVID-19 pandemic (the "Program"). Decl. of Spencer Self ("Self Decl.") ¶ 4. Under the Program that the City Council approved on May 20, 2020, households may receive up to $4200 each,[1] in the form of payment of the household's rent, mortgage, or utility bills. *Id.* ¶ 6. In order to qualify for the Program, a member of the household must provide evidence of either lost employment, a reduction in household income, or an increase in day care costs due to COVID-19 (a "COVID-19 Crisis") and be a City resident. *Id.* ¶¶ 7, 9. In addition, to comply with federal laws governing eligibility for federal public benefits, Program participants must be citizens or "qualified aliens" as that term is defined in federal law (the Eligibility Requirement). ¶ 9.

  The City decided to disburse these funds through the Arizona Community Action Association, doing business as Wildfire ("Wildfire") which has experience administering similar programs. *Id.* ¶¶ 4, 11, 16. Wildfire, in turn, will work with various non-profits as well as the City's Human Services Department (the "Partner Agencies"). The Partner Agencies will determine if applicants are eligible for the Program, and, provide guaranties to pay the eligible bills of Program participants, up to $4200. *Id.* ¶¶ 12-14. Program funds will subsequently be dispersed to pay the bills up to the guaranteed amounts. *Id.* ¶ 15.

---

[1] This was initially $2000, but a contract amendment is in progress to increase to $4200. Self Decl. ¶ 6.

### III.    ARGUMENT

Plaintiffs are not entitled to a preliminary injunction because: (1) they are unlikely to succeed on the merits; (2) they have not established a likelihood of irreparable harm; (3) the balance of equities tips sharply in the City's favor; and (4) an injunction is not in the public interest. *See Winter v. Nat. Res Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (setting out requirements for preliminary injunction).

While courts evaluate the preliminary injunction factors on a sliding "scale," *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013), they must be "extremely cautious . . . and should deny such relief unless the facts and law clearly favor the moving party" when the moving party seeks a mandatory injunction. *Kostick v. Nago*, 878 F. Supp. 2d 1124, 1139 (D. Haw. 2012) (citations and quotations omitted). A mandatory injunction "orders a responsible party to take action," as opposed to a prohibitory injunction which merely "preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009) (citations and alterations omitted). Plaintiffs are not asking for an injunction that preserves the status quo. Instead, they are asking the Court to expand the eligibility for the Program while this lawsuit is pending. Accordingly, Plaintiffs have a particularly high burden for a preliminary injunction in this case.

### A.    Plaintiffs are unlikely to succeed on the merits.

Plaintiffs are unlikely to succeed on the merits because they are wrong about both the scope of the laws restricting federal public benefits to qualified aliens and about the application of the Supremacy Clause to their claim.

#### 1.    The City's program is a federal public benefit and thus only available to qualified aliens under federal law.

The City's actions are constrained by several federal laws. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996

("PRWORA"), Pub. L. 104-193, 110 Stat. 2105 (1996).  Among several other changes to how the federal government provided or funded benefits to or for low-income individuals, PRWORA restricted the ability of federal agencies and state and local governments to provide "federal public benefits" to non-citizens who were not "qualified aliens."[2]  PRWORA defined "federal public benefits" as follows:

> (A) any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or *by appropriated funds* of the United States; and
>
> (B) any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or *by appropriated funds* of the United States.

8 U.S.C. § 1611(c)(1) (emphasis added).

This definition of "federal public benefits" is "expansive" and "broad." *Washington v. DeVos*, No. 2:20-CV-0182-TOR, 2020 WL 4275041, at *5 (E.D. Wash. Jul. 24, 2020).

The Program, using the federal funds the City received from the Coronavirus Relief Fund, are federal public benefits under the definition set out in PRWORA.  The funds involved are "appropriated funds of the United States."  Since the City is using federal funds to provide financial assistance to individuals and households, the Program is providing a "grant" under the Paragraph A of the federal public benefits definition.  The Coronavirus Relief Fund is not itself a "grant" to the City,[3] but the City's payments under the Program are grants to the individual recipients.

---

[2] "Qualified alien" is defined at 8 U.S.C. § 1641(b). Plaintiffs do not contend that the City has altered the federal definition of qualified alien in anyway, or that Plaintiffs or the class they seek to represent are qualified aliens within the meaning of 8 U.S.C. § 1641(b).

[3] *United States Department of the Treasury, Coronavirus Relief Fund Frequently Asked Questions* ("Treasury FAQ") at 10, available online at https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Frequently-Asked-Questions.pdf. (last accessed August 7, 2020) ("Fund payments made by Treasury to State, territorial, local, and Tribal governments are not considered to be grants but are 'other financial assistance' under 2 C.F.R. § 200.40.").

1       Alternatively, under Paragraph B of the definition, they are also an "assisted
2  housing" benefit or, at least, a "similar benefit" that is provided on a household
3  eligibility level.  Plaintiffs wrongly assert (at 7) that the Program it is not targeted to
4  eligibility units.  The relevant eligibility unit is households that have been financially
5  impacted by the COVID-19 pandemic.  (Doc. 1 ¶ 20; Doc 1-2 at 19, 20.)  Indeed, the
6  Treasury Department has advised the Coronavirus Relief Fund cannot be used to
7  provide assistance to individuals "without an assessment of individual need."  *See*
8  Treasury FAQ at 8.
9       Plaintiffs also argue that PRWORA does not apply to the CARES Act's
10 Coronavirus Relief Fund as either a matter of statutory construction because the
11 CARES Act is more specific, under a 22-year old Department of Health and Human
12 Services ("HHS") interpretation, or under one of several statutory exceptions.  All of
13 these arguments fail.

                **a.     The CARES Act is not a more specific statute.**

15      Plaintiffs argue (at 6) PRWORA does not apply to the Coronavirus Relief Fund
16 because of a statutory interpretation canon that favors a "more specific provision"
17 over a "general one", citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566
18 U.S. 639, 645 (2012).  As *RadLax* explains, this canon is generally applied to
19 "statutes in which a general permission or prohibition is contradicted by a specific
20 prohibition or permission."  *Id*.  It is simply a rule of thumb to be used when statutes
21 are in conflict on their face.  *RadLAX* then explains that the canon is also used to
22 "avoid not contradiction but the superfluity of a specific provision that is swallowed
23 by the general one."  *Id*.  This ensures that the general rule is given a different
24 meaning, and the statute is not read in a superfluous way.  *Id.*
25      This canon has no applicability here for several reasons.  *First*, the CARES
26 Act's Coronavirus Relief Fund is not more specific than PRWORA; it includes no

specific permissions whatsoever that funds could be provided to non-qualified aliens. It makes a general grant to local governments to use at their discretion for purposes not anticipated in their pre-COVID-19 budgets.  *Second*, there is neither conflict nor superfluity between the two federal acts.  The canon thus has no application because there is "no conflict."  *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 659 n.10 (1974).  Congress is not required to reincorporate PRWORA every time it passes new legislation that appropriates money that might be used to confer federal public benefits under PRWORA.  This would render PRWORA's broad restriction meaningless.

Plaintiffs cite to *Oakley v. Devos*, No. 20-cv-03215-YGR, 2020 WL 3268661, (N.D. Cal. Jun. 17, 2020) but *Oakley* dealt with a different provision in the CARES Act, which directed the Secretary of Education to disburse funding to certain colleges and universities "according to a specific formula that counts *all* of a [college or university's] students, excluding only those enrolled in distance education courses prior to the COVID-19 emergency."  *Oakley*, 2020 WL 3268661, at *15.  The colleges and universities were then authorized to disburse money to individual students, without any relevant restrictions.  The *Oakley* court thus identified a conflict—this fund was apportioned on an all-student basis, with no exceptions for non-qualified aliens, and the schools were directed to use these to make grants to individuals.  It is also not clear that *Oakley* is right— another district court in this circuit has disagreed with *Oakley*. *See e.g. Washington,* 2020 WL 4275041, at *6 (finding no conflict between PRWORA and the CARES Act with regard to the same education funds and instead finding the language establishing the education funding "too ambiguous to demonstrate" an intent to except CARES Act funding from PRWORA).

Regardless of whether *Oakley* or *Washington* is correct with regard to the CARES Act's education funding, Plaintiffs have not even identified the putative

6

conflict between the CARES Act and PRWORA with regard to the Coronavirus Relief Fund. Since no conflict exists, there is no reason to use the canon to imply an exception to PRWORA in the Coronavirus Relief Fund. Moreover, the guidance from Treasury regarding the Coronavirus Relief Fund refers to programs that comply with the CARES Act "and other applicable law," acknowledging that other laws are relevant to the CARES Act's implementation. Treasury FAQ at 8.

### b. The HHS interpretation confirms the Program is a federal public benefit.

Plaintiffs next argue (at 6) that under an interpretation offered by HHS in 1998, the City's program is not a federal public benefit because the program does not target "specific 'eligibility units.'" As an initial matter, this is factually wrong; while the City's program does not rely on traditional income verification, it does target specific households based on eligibility. The Program allows only households where members have either lost their job, had their hours or wages reduced, or suffered from increased day care costs due to COVID-19 to benefit. *See* Doc. 1-3 at 19. The Program thus does in fact "mandate ineligibility for individuals, households, or families that do not meet certain criteria." *See* Office of the Secretary, HHS, *Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit,"* ("HHS Interpretation of Federal Public Benefit") 63 Fed. Reg. 41,658-01 (Aug. 4, 1998).[4]

Indeed, HHS identified the Low Income Energy Assistance Program ("LIHEAP") as the type of program that is a federal public benefit covered by

---

[4] Notably Plaintiffs do not state that this Court should, let alone must, defer to the HHS interpretation. 8 U.S.C. § 1611 is not administered solely, or even primarily by HHS, but broadly applies to all federal government agencies, as well as state and local governments that spend appropriated federal money. For example, the Department of the Treasury manages the federal appropriations at issue in this case. Thus, HHS's interpretation—however persuasive it might be—is not entitled to deference; the Court must reach its own conclusion about PRWORA's meaning. *See, e.g., Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 642 n.30 (1986) (noting *Chevron* deference did not apply when 27 federal agencies interpreted a statute).

7

PRWORA. *Id.* LIHEAP is functionally identical to the City's program here. HHS (rather than the Treasury department) distributes funds to state governments (though not local governments) on formulaic basis. 42 U.S.C. § 8623(a)(1)(A). The states then use these funds to pay certain utility bills for households that qualify based on their income. *Id.* § 8624(b)(2). Arizona administers its LIHEAP funds through Wildfire—the same non-profit the City selected to administer its program. Self Decl. ¶ 16. HHS correctly reasoned that when it provides grants to states, and the states use those funds to pay for household utility expenses, then this is a federal public benefit and PRWORA prohibits states from making payments on behalf of non-citizens who are not qualified aliens. That the funds come from the Treasury Department rather than HHS, and that the City also pays mortgage or rent under the Program does not change this.

                **c.**      **The Program is not an "non-cash, in-kind" benefit.**

Plaintiffs next argue (at 8) that the Program falls within an exception to the bar on providing non-citizens who are not qualified aliens federal public benefits for "[s]hort-term, non-cash, in-kind emergency disaster relief." 8 U.S.C. § 1611(b)(1)(B). Plaintiffs make the argument that because the Program works by paying Phoenix's households rent, mortgage, or utility bills directly, without first passing the money to the household, the payments become a "non-cash" benefit and thus fall within the exception.

Plaintiffs rely on 26 U.S.C. § 61(a) which provides a definition of "gross income" for the purpose of computing taxable income. It does not—and does not purport to—create a definition of cash or non-cash benefits. And indeed, the I.R.S. requires persons to report in-kind payments of goods or services as income, based on their fair market value. *See* Treas. Reg. § 1.61-2(d). The Internal Revenue Code's definition of gross income—which includes in-kind income— thus has absolutely no bearing on whether payments made on behalf of a household for bills the household

8

incurred is "non-cash assistance" for the purpose of PRWORA.  Nor is Plaintiffs' reliance on the income eligibility calculations for the purpose of the Supplemental Nutritional Assistance Program ("SNAP") appropriate.  7 U.S.C. § 2014(d)(1) addresses how to calculate income for a specific purpose (eligibility for SNAP benefits)—not the meaning of cash versus non-cash assistance for the purpose of PRWORA.  This statute simply makes a distinction between "money payable directly to a household" and all other forms of income; it does not define money paid on the household's behalf as "non-cash, in-kind" assistance.

Congress did not define "non-cash, in-kind" disaster relief.  The exemption obviously does not extend to all in-kind assistance because it only applies to "non-cash, in-kind" assistance.  If Plaintiffs are correct that paying an individual's bills is "non-cash, in-kind" assistance, this would create a massive expansion of PRWORA's limited exception.  If Plaintiffs are right, anything can be exempted from being a federal public benefit by having a non-qualified alien agree to pay for something, and then presenting the government with the bill.  Paying a bill on a household's behalf cannot be reasonably construed as a "non-cash, in-kind" relief.  Rather, "non-cash, in-kind" reliefs must be understood as providing good and services, e.g., temporary housing, emergency medical treatment, or the like, not paying people's bills.  The Program does not provide goods or services to households.  It pays certain bills that households have incurred up to a capped amount.  The Program is not within the exception for "non-cash, in-kind" disaster relief.

### d.   The non-profit verification exception is irrelevant.

Plaintiffs finally argue (at 9) that even if the Program is a federal public benefit, 8 U.S.C. § 1642(d) prevents the City from ensuring funds are distributed in accordance with federal law because "a nonprofit charitable organization, in providing any Federal public benefit . . . is not required *under this chapter* to determine, verify, or otherwise require proof of eligibility for any applicant for such

benefits." (emphasis added). While 8 U.S.C. § 1642(d) states that federal law does not *require* non-profits to verify eligibility, it does not *prohibit* non-profits from verifying eligibility.

Moreover, regardless of whether non-profits are required to verify eligibility, the eligibility requirements would still apply. 8 U.S.C. § 1642(d) does not purport to alter the definition of a federal public benefit, expand access to federal public benefits, or otherwise render non-citizens who are not "qualified aliens" eligible for benefits. The City is implementing the Program with the assistance of non-profit organizations which, under their contracts, are responsible for determining an applicant's eligibility. The City Human Services Department also accepts applications and make eligibility determinations. Self Decl. at ¶¶ 13, 14. Federal law does not prohibit non-profits from contractually agreeing to determine eligibility for federal public benefits.

**2. Even if not required by federal law, the Eligibility Requirement is not preempted by federal law.**

Even if the Program is not a federal public benefit, the Eligibility Requirement does not violate the Supremacy Clause.

No one disputes that Congress has broad powers over immigration and holds the exclusive authority to create immigration classifications. But not all state or local regulations that touch on immigration are preempted. *See, e.g., Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 587 (2011) (finding that Arizona law that revoked licenses of employers who employ unauthorized aliens in certain circumstances were not preempted); *Keller v. City of Fremont*, 719 F.3d 931, 943-945 (8th Cir. 2013) (holding city ordinance touching on immigration status not preempted). The Eligibility Requirement is such a regulation.

The Supremacy Clause grants Congress the power to exclude state and local regulation through preemption. A federal law's preemption of state and local

regulations can be "explicitly stated in [a] statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.* 430 U.S. 519, 525 (1977). Plaintiffs do not argue that either PRWORA or the CARES Act contains a relevant express preemption clause, and there is none.

Congress may also impliedly preempt state and local regulations. Implied preemption has a "high threshold [that] must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Lit.*, 959 F.3d 1201, 1206 (9th Cir. 2020). (citation omitted). Courts will "assume the 'historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona v. United States*, 567 U.S. 387, 400 (2012) (citation omitted). This includes cases where "compliance with both federal and state regulations is a physical impossibility," *Fl. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 142-43, (1963), and those instances where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

That high threshold is not met here. The Supreme Court has repeatedly held that states may regulate areas of traditional state concern that might impact non-citizens, so long as they do so in ways that mirror federal objectives and incorporate federal immigration classifications. *See, e.g., DeCanas v. Bica*, 424 U.S. 351, 355 (1976) *superseded by statute on other grounds as recognized by Arizona v. United States*, 567 U.S, 387, 403 (2012)*; Plyler v. Doe*, 457 U.S. 202, 225-26 (1982). When a state regulation touching immigration merely "closely tracks" a federal regulation and comports with federal goals, there is no preemption. *Whiting*, 563 U.S. at 601 (plurality opinion).

11

The City did not create any new immigration classifications here; the City simply applied the classifications already created in federal law. And the CARES Act's Coronavirus Relief Fund intentionally gave the City broad discretion to spend money however on whatever "necessary expenditures" it incurred due to COVID-19. The City is entitled to mirror federal classifications set out in PRWORA by simply requiring that recipients of this federally funded aid be citizens and qualified aliens. Because the City's Eligibility Requirement closely tracks federal law and comports with federal goals, even if the Program is not a federal public benefit, the CARES Act does not impliedly preempt the Eligibility Requirement.

### B. Plaintiffs Have Not Established Irreparable Harm.

To qualify for a preliminary injunction, Plaintiffs must also show that they will suffer irreparable harm if the injunction is denied. *See Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). Plaintiffs have not made this showing.

Typically, economic injuries are not considered irreparable harm. *See e.g., Morgan Stanley & Co., LLC v. Couch,* 134 F.Supp.3d 1215, 1234-35 (E.D. Calif. 2015). That is the nature of the harm that Plaintiffs allege here. Plaintiffs seek a preliminary injunction to modify the eligibility requirements so non-citizens who are not qualified aliens as defined by federal law would qualify for the Program. None of Plaintiffs' cases support the proposition that ineligibility for this type of grant program is irreparable harm. *See Valle del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013) (threat of criminal prosecution irreparable harm); *Ariz. Dream Act Coal v. Brewer,* 757 F.3d 1053, 1068 (9th Cir. 2014) (denial of drivers' license irreparable harm); *Mitchell v. U.S. Dep't of Hous. & Urban Dev.,* 569 F. Supp. 701, 705 (N.D. Cal. 1983) (loss of public housing, particularly in area with lack of affordable

housing, irreparable harm); *Indep. Living Ctr. of S. Cal., Inc. v. Shewry,* 543 F.3d 1047, 1049-50 (9th Cir. 2008) (cuts to Medicaid providers threatened availability of prescription drugs); *Beno v. Shalala,* 30 F.3d 1057, 1063 (9th Cir. 1994) (cuts to welfare benefits plaintiffs currently receiving was irreparable harm).

The payments through the Program are used for the mortgages, rent and utilities of people harmed by the COVID-19 pandemic. But there is no evidence that the individual plaintiff or members of the two organizational plaintiffs will suffer some non-financial, irreparable harm if they are ineligible for this grant. In addition, this is not the only program available for people harmed by the pandemic. For example, the Governor has delayed evictions through October 2020. Ariz. Gov. Doug Ducey, Exec. Order 2020-49 (July 16, 2020). Area utilities have halted disconnections and late payments because of the pandemic.[5] There are also private fundraising efforts to support the Arizona Undocumented Workers Relief Fund, which provides assistance to people who are undocumented or from mixed status households. Hernandez Decl. ¶ 11; Ruiz Decl. ¶ 5. This provides an additional source of support for people who do not have the immigration status necessary to qualify for the Program.

Based on this record, plaintiffs have not shown that they will likely suffer irreparable harm if the preliminary injunction is denied. The pandemic, not the Program, is the cause of the harms.

C. **The Public Interest and Balance of Harms Do Not Support a Preliminary Injunction.**

In addition, to warrant preliminary injunctive relief, Plaintiffs must clearly demonstrate that the "balance of equities weighs in [their] favor" and that the injunction serves the public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). When the government is a party, the analysis of these factors "merge." *Id.*

---

[5] *See* https://srpnet.com/about/customer-assistance.aspx , https://www.aps.com/en/Residential/Save-Money-and-Energy/Disconnections , https://www.swgas.com/en/covid19 (last visited August 7, 2020).

13

The balance of harms here does not favor plaintiffs. There is a limited pool of funds for the Program. Allocating some of it to Plaintiffs or their members may deprive others of the funding they need for their mortgages, rent or utilities. Self Decl. ¶ 17. Indeed, Plaintiffs sought expedited consideration of their preliminary injunction motion because of their concern that funds might be expended before their motion is resolved. If everyone receives the maximum grant of $4,200, only 5,099 households in Phoenix would be able to receive grants under the program. *Id.*

If preliminary injunctive relief is granted, the funding that might be made available to pay Plaintiffs' utilities and other expenses cannot be recouped later and reallocated to some other needy person. Once Plaintiffs receive this one-time grant, they have received all of the relief they seek in this case, and they may also effectively deprive some other applicant of a potential grant. Given the fixed amount of money to be allocated, the balance of harms does not favor Plaintiffs.

Plaintiffs' public interest also fails. Their argument (at 14) is that "imposing unlawful restrictive immigration requirements" is not in the public interest. This assumes they are correct on the merits, which they are not. Particularly given the fixed amount of funding that is available, the public interest is served by permitting the program to be implemented as is, unless this Court determines that the current eligibility requirements violate federal law.

Neither the balance of harms nor the public interest would be served by a preliminary injunction.[6] This is not to discount the harms that Plaintiffs describe in their declarations. The harms, however, are caused by the pandemic, and this Program

---

[6] Because Plaintiffs' Supremacy Clause claim raises a pure issue of law, the City would support consolidating the preliminary injunction with a trial on the merits under Rule 65(a)(2) to resolve that claim. The merits could be resolved based on the briefing and oral argument. Even if this Court agrees with Plaintiffs' on the merits of Count 1 (which it should not), Plaintiffs should not receive a permanent injunction. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).

cannot solve all of those problems.

## IV. BOND REQUIREMENT

If this Court grants a preliminary injunction, the City requests security sufficient to ensure that it may recoup amounts that the Program might be obligated to pay for people who are not qualified immigrants during the term of the preliminary injunction.

## V. CONCLUSION

This Court should deny the preliminary injunction.

Dated this 7th day of August, 2020.

          OSBORN MALEDON, P.A.

          By    s/ Mary R. O'Grady
                 Mary R. O'Grady
                 Emma J. Cone-Roddy
                 2929 North Central
                 21st Floor
                 Phoenix, Arizona  85012-2793

          CITY ATTORNEY'S OFFICE

                 Cris Meyer
                 Les S. Tuskai
                 Phoenix City Hall
                 200 West Washington Street
                 13th Floor
                 Phoenix, Arizona  85003

                 Attorneys for Defendant