ELLEN SUE KATZ, AZ Bar. No. 012214
BRENDA MUÑOZ FURNISH, AZ Bar No. 027280
ORIEN NELSON, AZ Bar No. 032861
WILLIAM E. MORRIS INSTITUTE FOR JUSTICE
3707 North Seventh Street, Suite 300
Phoenix, Arizona 85014
(602) 252-3432
eskatz@qwestoffice.net
bmfurnish@qwestoffice.net
onelson@qwestoffice.net

DANIEL J. ADELMAN AZ Bar No. 011368
ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST
514 West Roosevelt Street
Phoenix, Arizona 85003
(602) 258-8850
danny@aclpi.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Poder in Action, an Arizona nonprofit corporation; Arizona Dream Act Coalition. an Arizona nonprofit corporation; and Aurora Galan Mejia, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>The City of Phoenix, a municipal corporation,<br><br>Defendant. | No. CV 20-01429-DWL<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs' claim under the Supremacy Clause of the U. S. Constitution satisfies the criteria for a preliminary injunction. As discussed below, neither Congress nor the relevant federal agency has imposed or instructed states and localities to impose immigration restrictions in addressing the emergency needs of their residents when using monies distributed from the Coronavirus Relief Fund ("CRF"). When Congress intended to impose such restrictions in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), it did so specifically. The immigration restrictions in the Personal

Responsibility and Work Opportunity Reconciliation Act ("PRWORA") do not apply here. Even if the 1996 law could apply, long-standing federal guidance establishes that the CRF does not meet the federal public benefit definition under that law and the emergency housing funds at issue fall squarely within the PRWORA exceptions.

## I. Plaintiffs Have Shown a Likelihood of Success on the Merits of their Preemption Claim

### A. Plaintiffs Request a Prohibitory Injunction

As a preliminary matter, Defendant incorrectly claims that Plaintiffs request a mandatory injunction which the City asserts requires a higher burden. Doc. 27, Response at 3. Courts have struggled with the distinction between a mandatory and prohibitory injunction. "Our approach to preliminary injunctions, with separate standards for prohibitory and mandatory injunctions, is controversial." *Hernandez v. Sessions,* 872 F.3d 976, 997 (9th Cir. 2017). Because the City imposed the challenged restrictions policy on the CRF, this case falls within a prohibitory injunction. Defendant's policy imposed these restrictions unilaterally. No federal law, including the CARES Act, PRWORA and federal guidance prohibits Plaintiffs from securing this federally funded assistance.

While a mandatory injunction requires a party to "take action," a prohibitory injunction restrains the party from further violating the law. *Meghrig v. KFC Western, Inc*, 516 U.S. 479, 484 (1996). The Ninth Circuit has held it is a prohibitory injunction when the injunction sought would prohibit enforcement of a new law or policy. In *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060-61 (9th Cir. 2014), Deferred Action for Childhood Arrivals ("DACA") recipients challenged Arizona's policies concerning the issuance of drivers' licenses to DACA recipients. "[L]ike other injunctions that prohibit enforcement of a new law or policy, Plaintiffs' requested injunction is prohibitory." *Id.* at 1061. Similarly, in *Hernandez,* the court held that the request that the government hold future bond hearings for detained immigrants and consider the detainees' financial circumstances was a prohibitory injunction. "This part of

the injunction prevents future constitutional violations, a classic form of prohibitory injunction." 872 F.3d at 998. Here, Plaintiffs seek a prohibitory injunction that prohibits the City from imposing its immigration restrictions in violation of federal law.[1]

### B. The Coronavirus Relief Fund Imposes No Eligibility Restriction Based on Immigration Status

Section 5001 of the Cares Act added a new section 601 to the Social Security Act, the Coronavirus Relief Fund. Section 601(d)(1) provides federal funds to state and local governments, such as the City of Phoenix, to cover costs that are "necessary expenditures incurred related to the public health emergency with respect to the Coronavirus Disease 2019 (COVID-19)." Significantly, Defendant apparently concedes there is nothing in the CARES Act that specifically requires or allows the City to impose the immigrant restrictions. Indeed, when Congress wanted to restrict eligibility for funds in the CARES Act, it did so explicitly. Although Congress placed no immigration eligibility on the Coronavirus Relief Fund, it did place immigrant eligibility restrictions in another section of the CARES Act that provides for stimulus checks. *See* § 6428(d), 134 Stat. at 335 (excluding "nonresident alien individual[s]" from receiving recovery rebates). Having placed express restrictions on the eligibility for stimulus checks, Congress' decision to not impose restrictions on the Coronavirus Relief Fund must be given effect. In interpreting a statute, the Court first looks to the plain meaning of the law. *Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

Two district courts relied, in part, on the imposition of immigrant eligibility criteria in only part of the CARES Act to find that the Secretary of Education's imposition of immigrant eligibility restrictions on the Higher Education Emergency Relief Funds ("HEERF") in the CARES Act was contrary to the plain meaning of the Act. *Noerand v. DeVos, et al.*, No. 20-11271-LTS, 2020 WL 4274559 (D. Mass. July 24, 2020); *Eloy Ortiz Oakley et al., v. Betsy DeVos, et al.*, No. 20-CV-03215-YGR, 2020 WL

---

[1] For all the reasons discussed below, even if the relief requested were considered a mandatory injunction, Plaintiffs have met the relevant standard.

3268661 (N.D. Cal. June 17, 2020). The courts enjoined the Secretary from restricting the funds and noted that there were no restrictions on eligibility for the educational funds in the Act based on immigration status, although eligibility restrictions were included in another part of the Act, section 6428, concerning the individuals who could receive recovery or stimulus rebates. *Noerand* at * 4; *Oakley at* *8-9. The same analysis applies here.  Specifically, the CARES Act's Coronavirus Relief Fund does *not* restrict immigrant eligibility for an eviction or homeless prevention program.

Defendant has two responses, but importantly neither looks at the language of the CARES Act. First, Defendant points to the Treasury Department's *Frequently Asked Questions*, Doc. 27, Response at 8, where the Treasury, in response to the question whether an application for assistance by businesses or individuals is required, noted that the program "should be structured" so that assistance is necessary to respond to the COVID-19 pandemic and satisfies the requirements of the "CARES Act and other applicable law." *Coronavirus Relief Fund Frequently Asked Questions* ("FAQs") (updated on August 10, 2020) at 8, https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Frequently-Asked Questions.pdf. This vague reference to other applicable laws in the FAQs does not support the City's claim that PRWORA applies.

Rather, what is significant is that several times the Treasury Department issued and updated its *Coronavirus Relief Fund Guidance for State, Territorial, Local and Tribal Government* (updated on June 30,  2020), https://home.treasury.gov/systems/files/136/Coronavirus-Relief-Fund-Guidance-for-State-Territorial-Local-and-Tribal-Governments.pdf, and its FAQs and there is no reference to immigrant eligibility concerning the use of the Coronavirus Relief Fund.

Second, Defendant asserts with no legal support that Congress is not required to "reincorporate" PRWORA every time a federal public benefit may be created. Doc. 27, Response at 6. This was essentially the same argument in Oakley. Because Defendant manifested its intent by including immigrant criteria for some CARES Act provisions, but omitted that criteria from the CRF, the more specific manifestation of intent controls.

Defendant also is incorrect because Section 1614 of PRWORA requires that each federal agency that administers a program that comes within PRWORA "shall . . . post information and provide general notification to the public" regarding "eligibility for each program." The Treasury Department has not posted such a notice for the Coronavirus Relief Fund. The lack of notice, added to the plain language of the CARES Act, are dispositive of this issue. This federal funding stream under federal law has no restrictions and the City cannot impose restrictions. The CARES Coronavirus Relief Fund Act with no immigration restriction supersedes PRWORA.

### C. The Coronavirus Relief Fund Assistance Does Not Meet the Definition of Federal Public Benefit in PRWORA

Plaintiffs explained in their initial Memorandum that under the long-standing and contemporaneous Health and Human Services' ("HHS") interpretation of PRWORA, the funds at issue fall outside of the definition of federal public benefits to which PRWORA applies. Doc. 15 at 5-9. Moreover, even if the funds could be a federal public benefit, as explained in the next section of our Reply, the City's emergency housing and utility relief program falls squarely within an exception to the law's restrictions.[2]

Defendant claims that the Court should not give HHS' longstanding and contemporaneous interpretation of the definition of federal public benefit deference. Doc. 27, Response at 7, footnote 4. The HHS interpretation is entitled to deference under *Chevron*. Defendant's reliance on *Bowen v. American Hospital Association,* 476 U.S. 610, 642, n. 30 (1986) to assert that the HHS interpretation while persuasive, is not entitled to deference, is misplaced. In that case, approximately 27 agencies had interpreted the provision at issue. In marked contrast, HHS took the lead on the

---

[2] The City claims that Plaintiffs do not contend that the City has altered the qualified immigrant definition in any way. Doc. 27, Response at 4, footnote 2. Plaintiffs do not agree that the manner in which the City decides who is a qualified immigrant for eligibility purposes complies with PRWORA and that the documents the City allows to be used to show qualified immigration status are the full range of appropriate documents under PRWORA. Rather, Plaintiffs did not bring these claims separately because these issues are subsumed into Plaintiffs' larger preemption claims in this case and will be resolved if Plaintiffs obtain a preliminary injunction.

5

interpretation of the term "federal public benefit" in PRWORA. Twenty-two years later, it continues to be the preeminent interpretation. That other agencies did not publish their own guidance shows that HHS was speaking for the federal government. Such a long-standing interpretation is entitled to *Chevron* deference. *See e.g.*, *Barnhart v Walton,* 535 U.S. 212, 219-220 (2002) (according *Chevron* deference to "long-standing" interpretation applied for twenty years by the Social Security Administration); *Arizona Health Care Cost Containment System v. McClellan*, 508 F.3d 1243, 1253-54 (9th Cir. 2007) (according *Chevron* deference to an interpretation used by the Health Care Financing Administration for more than twenty years).

Next, Defendant tries to fit the emergency housing funds within the two prongs of Section 1611(c)(1) of PRWORA. Neither attempt is successful. The funds do not come under 8 U.S.C. §1611(c)(1)(A), Doc. 27, Response at 4. First, the funds do not come within the plain language of the section because they are not a "grant, contract, loan or a license." In its 1998 interpretation HHS concluded that this section generally includes "agreements or arrangements between Federally funded programs and individuals, such as research grants, student loans, or patent licenses." Office of the Secretary, Health and Human Services ("HHS"), *Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit,"* ("HHS Interpretation of Federal Public Benefit") 63 Fed. Reg. 41658, 41659 (Aug. 4, 1998). The City acknowledges that the Treasury Department concluded that payments made to the City under the CRF are not grants but "other financial assistance" under 2 C.F.R. §200.40. Doc. 27, Response at 4, footnote 3. If the funds are not a grant to the City, then the City's subsequent distribution of these funds does not turn these funds into a grant to the applicants. Thus, the emergency housing assistance does not come within Section 1611(c)(1)(A).

Defendant, in the alternative, asserts that the emergency housing is an "assisted housing" or similar benefit that targets "specific 'eligibility units'" under Section 1611(c)(1)(B). Doc. 27, Response at 5. Here, as well, the City misstates the HHS

guidance when it discusses whether the program is directed to "eligibility units." The inquiry is whether the "authorizing statute," in this case the CARES Act, "must be interpreted to **mandate ineligibility** for individuals, households, or families who do not meet certain criteria, such as **specific income level** or **specified age**." (emphasis added). HHS Interpretation of Federal Public Benefit, 63 Fed. Reg. at 41659. The CARES Act has no such mandate on ineligibility.

HHS similarly explained that the term "federal public benefits" does not include benefits targeted to certain communities or sectors of the population rather than particular eligibility units (such as an individual, household or family "unit" that met specified qualifications). *Id*. When a program does not have specific income, resource or age limits, the funds are not targeted to specific "eligibility units" and are not a federal public benefit under PRWORA. For this reason, "benefits that are generally targeted to communities or specified sectors of the population (e.g. people with particular physical conditions . . . [or] general age groups such as the youth or the elderly)" would not be included*. Id.*

The City responds by taking part of a sentence in the FAQs out of context. Doc. 27, Response at 5. In the same section of the FAQs referred to above, in response to whether businesses or individuals must submit an application, the Treasury Department noted: "For example, *a per capita payment to residents of a particular jurisdiction* without an assessment of individual need would not be an appropriate use of the payments from the Fund." FAQs at 8 (emphasis added). There is no per capita (per person) distribution here. This statement would only prohibit a local jurisdiction from using its CRF funds to distribute them to all of its residents. This caution is a far cry from "mandate[ing] ineligibility for individuals, households, or families who do not meet certain criteria, such as specific income level or specified age." (emphasis added). HHS Interpretation of Federal Public Benefit, 63 Fed. Reg. at 41559. The City's emergency housing program requirement that persons suffer some financial impact, such as *some* reduction in income or *some* increase in expenses due to the pandemic, is not akin to

1  eligibility criteria such as a specific income level, specific loss of income or specific
2  increase of expenses required. Doc. 24-1 at 19. Moreover, while the City contract lists
3  "COVID-19 Acceptable Crisis Documentation" there is nothing in the contract that
4  provides that these are the only documents that can be submitted.  Doc. 24-1 at 20.  This
5  is the classic situation where the program is open to a broad group of persons and does
6  not fall within the definition of a federal public benefit.

7  Finally, the City claims with no legal or factual support, that the Low Income
8  Energy Assistance Program ("LIHEAP") is "functionally identical to the emergency
9  housing program." Doc. 27, Response at 8.  It is not.  The LIHEAP statute has specific
10 income eligibility limits. 42 U.S.C. § 8624 (b)(2)(B)(i) and (ii) (household income cannot
11 exceed 150% of the poverty level for the state or 60% of the state medium income,
12 respectively). The LIHEAP regulation, 45 C.F.R. § 96.85, explains how income
13 eligibility is determined. In addition, the LIHEAP statute identifies certain persons who
14 are categorically eligible for the assistance, such as persons who receive Supplemental
15 Security Income benefits or food stamps. Only one such person must be in the household.
16 42 U.S.C. § 8624 (b)(2)(A) (ii) and (iii), respectively. Thus, the LIHEAP program is
17 consistent with HHS guidance for the definition of federal public benefit because
18 LIHEAP mandates *ineligibility* for those who do not meet the specified criteria in the
19 statute. This analysis is no doubt the reason that HHS included LIHEAP in the listed
20 federal benefits covered by PRWORA. HHS Interpretation of Federal Public Benefit, 63
21 Fed. Reg. at 41660.  But even under PRWORA, some LIHEAP weatherization programs
22 are not considered public benefits. *Id*.

23 The CRF includes no similar individual income or categorical requirement like
24 those in LIHEAP.  Congress established the CRF to address an emergency disaster
25 caused by the COVID-19 pandemic and did not intend for these funds to have
26 immigration restrictions.
27 ///
28 ///

8

**D.   Even if PRWORA Applies, the Emergency Housing Funds Are an Exception as Short-Term, Non-Cash, In-Kind Emergency Disaster Relief**

Even if the emergency housing assistance came within the definition of "federal public benefits" in PRWORA, the federal law contains a mandatory exception for "short-term, non-cash, in-kind emergency disaster relief."  8 U.S.C. § 1611(b)(1)(B). "Subsection (a) **shall not apply** with respect to the following Federal public benefits."  8 U.S.C. § 1611(b)(1) (emphasis added).  The funds at issue fall squarely within this exception.  Defendant cannot ignore this mandate.

With this exception, the Congress carved out disaster relief from the general PRWORA prohibitions. Here, the CRF does not provide on-going relief.  The funds must be spent within a short timeframe (by the end of 2020), cannot be used for anything already in the City's budget, Section 5001(d)(2), and must have been incurred between March 1 and December 30, 2020, Section 5001(d)(3)**.** These funds are only for disaster-related assistance and not to replace the City's lost revenues.

Defendant's argument, Doc. 27, Response at 8, that the City's program does not fall within this exception is without any support.  There are four parts to the exception. In its Response, the Defendant fails to discuss the "short-term" and "emergency disaster relief" parts of the mandatory exclusion.  Instead, Defendant tries to create a "floodgates" argument, claiming that if paying someone's bills is "non-cash, in-kind" that would create a massive expansion of the PRWORA's exception. Doc. 27, Response at 9. Defendant's claims are vastly overstated and not based on the CRF. The program's assistance is only for *short-term* rent, mortgage or a utility bill related to the emergency disaster and the assistance never goes to the individual but instead goes to the landlord, mortgage lender or utility.  These are one-time only payments intended to meet an immediate emergency and thus are short-term.  Doc. 24-1 at 19.

Further, the City states without any legal support that two parts of the exception "non-cash, in-kind" "must be understood as limited to goods and services."  Doc. 27,

9

1   Response at 9.  Indeed, there is nothing in the plain language of PRWORA or the HHS
2   guidance that limits this exception to goods and services.
3       Under the plain wording of 8 U.S.C. § 1611(b)(1)(B), short-term, non-cash, in-
4   kind emergency disaster relief such as the City's Coronavirus Relief Fund for emergency
5   housing assistance fits within the explicit exception to PRWORA and, therefore, is not
6   restricted based on immigration status.[3]
7       In addition, the emergency housing funds are similar to other federally funded
8   programs generally exempt from Section 1611's restrictions, such as programs meant to
9   address public health, medical emergencies, disaster relief, or "otherwise necessary for
10  the protection of life or safety."[4]

11      **E.   The City's Immigrant Restriction Is Preempted**

12      The City claims that even if the emergency housing assistance is not a federal
13  public benefit, its immigration restrictions are not preempted by federal law. Doc. 27,
14  Response at 10. The City's immigrant restrictions are invalid under both field and
15  conflict preemption principles.  The Supreme Court has recognized that the federal law
16  governing immigrants preempts state law when it encroaches on the federal law or is in
17  conflict with it.  *Arizona, et al., v. U. S*., 567 U.S. 387, 399 (2012).  A local provision is
18  in conflict with the federal law when it "stands as an obstacle to the accomplishment and
19  execution of the full purposes and objectives of Congress." *Id*. at 406 (quoting *Hines v.
20  Dadidowitz*, 312 U.S. 52, 67 (1941).  In this situation, compliance with both local and
21  federal requirements is not possible.  *Id.*   Here, Congress made its intent clear by
22  including immigration eligibility restrictions in parts of the CARES Act but by omitting

---

[3]  The funds at issue also are distributed by non-profits and the exception in 8 U.S.C. § 1642(d) applies.

[4]  The Attorney General issued a final specification regarding programs exempt under section (b)(1)(D). *Final Specification of Community Programs Necessary for the Protection of Life or Safety Under Welfare Reform Legislation,* 66 Fed. Reg. 3613-02, 2001 WL 31944(FR) (Jan. 16, 2001).  The criteria included "(g) Any other programs, services, or assistance for the protection of life or safety." *Id.* at 3616.

such restrictions in the CRF portion of the Act. The City's decision to impose immigration restrictions in the CFR program is in conflict with federal law in at least three ways: it does not follow the plain language in the CARES Act; it does not comport with the federal definition of "federal public benefits" in PRWORA; and it conflicts with the short-term, non-cash, in-kind disaster relief exemption in PRWORA. *See Valle del Sol, Inc., v. Whiting,* 732 F.3d 1006, 1026-27 (9th Cir. 2013) (the additional and distinct state penalties disrupt the federal plan even when the state shares similar goals to the federal government).

The City's restrictions also fall under the field preemption principles. The CARES Act and PRWORA provide a "pervasive" regulatory framework concerning when immigrants are eligible for federally funded assistance. The intent to displace state law can be inferred from a framework of regulation "so pervasive . . . that Congress left no room for States to supplement it" or "where there is a federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state law on the same subject." *Arizona*, 567 U.S. at 399 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). In this situation, Congress left no room for states to make their own decisions on immigrant eligibility or to set different eligibility requirements when they are using federal funds. *See Arizona Dream Act Coalition v. Brewer,* 855 F.3d, 967, 974-75 (9th Cir. 2017) (state law regarding drivers' license is preempted by the exclusive federal authority to classify noncitizens).

The City has restricted the emergency housing funds for immigrants when Congress imposed no such restriction in the CARES Act. Moreover, the City relies on PRWORA when the law specifically exempts short-term, non-cash, in-kind emergency disaster relief. The City's policy does not in any way "mirror" federal objectives. Rather, the City has undercut the federal objective to ensure that emergency disaster relief is available without regard to immigration status. The City's policy does not in any way closely track a federal law or comport with federal goals. Instead, it directly conflicts with federal law. Thus, it is preempted.

**II.     Plaintiffs Are Likely to Suffer Irreparable Harm**

Plaintiffs have shown they are likely to suffer irreparable harm if a preliminary injunction is not granted. This is the applicable standard. *See Winter v. Nat. Def. Resources Council, Inc.*, 555 U.S. 7, 20 (2008). Defendant's arguments to the contrary are particularly weak.

As explained in Plaintiffs' Memorandum in Support, Doc. 15 at 10-12, and the Declarations in the record, the immigrant communities on whose behalf this case is brought have been hit very hard by the pandemic.[5] They have lost income and they risk being evicted or having their utilities shut off because of losses suffered due to the pandemic. Now they are being wrongfully denied the opportunity to participate in the City's emergency housing assistance program that is funded with CRF money. The types of harm that will likely be suffered in this community are precisely the types of harms that courts have repeatedly held constitute irreparable harm to justify a grant of the preliminary injunction. *See, e.g., Mitchell v. U.S. Department of Housing and Urban Development,* 569 F.Supp.701, 704-05 (N.D. Cal. 1983) (loss of housing would cause irreparable harm); *Beno v. Shalala,* 30 F.3d 1057, 1063 n. 10 (9th Cir. 1994) (reduction in benefits imposes irreparable harm; even if the court later granted reimbursement of withheld funds, that would not prevent injury to persons living at the economic margin of existence) (collecting case); *see also Arizona Dream Act Coalition,* 757 F.3d at 1068 (district court erred in requiring plaintiffs to show that the harm they would suffer in the absence of an injunction was "extreme or very serious" as opposed to simply being irreparable).

Defendant also claims that the inability to obtains federal funds to pay rent, mortgage or utilities is an economic injury and not the type of harm used to show irreparable harm. Doc. 27, Response at 12. There is absolutely no support for this

---

[5] Declaration of Aurora Galan Mejia in Support of Plaintiffs' Motion for Class Certification, Doc. 12 ¶ 8; Declaration of Viridiana Hernandez in Support of Plaintiffs' Motion for Class Certification, Doc. 10 ¶ 15; Declaration of Karina Ruiz De Diaz in Support of Plaintiff's Motion for Class Certification, Doc. 11 ¶ 3.

1 position. Indeed, Defendant cites no case where the loss of a federally funded benefit did not constitute actual or likely irreparable harm. The City also fails to cite a case where there was a claim of a constitutional violation and the constitutional violation coupled with some harm was not sufficient to show irreparable harm. It is. *See, e.g., American Trucking Associations, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1058-59 (9th Cir. 2009).

Instead, the City relies on an employment arbitration case that is not relevant. Doc. 27, Response at 12. As the court explained in *Mitchell*, the loss of public housing assistance would cause likelihood of harm, particularly where this is a scarcity of public housing. Here, the scarcity of the funds in the emergency housing program, combined with the very real fears of eviction or having utilities shut off show a likelihood of irreparable harm. *See also Valle del Sol, Inc.,* 732 F.3d at 1029 (finding a likelihood of irreparable harm because the plaintiffs had shown harm to their organizational missions as a result of the state statute that conflicted with federal immigration law).

Defendant also suggests that Plaintiffs and their members may not suffer irreparable harm, referring to Governor Ducey's Executive Order concerning evictions and the Arizona Undocumented Workers Relief Fund. The fact that there is a volunteer private fundraising effort has no relevance to whether there is likely irreparable harm. The CRF are federal funds that the City is obligated to distribute lawfully. For example, the state could never claim that wrongfully prohibiting some persons from getting food stamps would not cause irreparable harm because there are food banks available. Moreover, there is nothing in the record concerning the terms of the Governor's Executive Order and any impact that it may have on any eviction. Indeed, the Executive Director of Poder, Viridiana Hernandez, stated that her program has interviewed tenants who were evicted. Declaration of Viridiana Hernandez in Support of Plaintiffs' Motion for Class Certification, Doc. 10, ¶ 14. There are no damages that can compensate someone who was put out on the street or became homeless because they could not access the emergency housing funds. Rather this lawsuit tries to avert those calamities.

Plaintiffs have established the likelihood of harm. This clearly is a case of preventable human suffering where "[r]etroactive restoration of benefits would be inadequate to remedy these hardships." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983), *stay granted on other grounds*, 463 U.S. 1328 (1983). The City has allocated a finite amount of funds to the emergency housing program and once those funds are distributed, the program will end. Only the issuance of a preliminary injunction enjoining Defendant from imposing the immigrant eligibility restriction will end the likelihood of harm experienced by Plaintiffs and the putative class.

### III. The Balance of Hardships and Public Interest Strongly Favor Plaintiffs

Defendant's arguments regarding the balance of hardships and the public interest are even weaker. As the Ninth Circuit stated in *Valle de Sol,* "it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially where there are no adequate remedies available." 732 F.3d at 1029. Defendant has no answer to this.

Instead, Defendant attempts to turn this factor on its head, claiming that providing assistance to Plaintiffs could result in other persons not getting benefits. Doc. 27, Response at 14. Plaintiffs want to be treated fairly and in accordance with federal law and Congressional intent as manifested in the CARES Act. The question is whether it serves the public interest to wrongfully exclude some persons from being able to participate in the program and to justify the illegal exclusion by stating that doing so will enable other persons to participate. There is no legal support for such a position.[6]

### IV. The Court Should Not Order a Bond

The City requests a security bond sufficient to allow it to recoup any assistance paid to vendors for the putative class during the term of the preliminary injunction. This is the type of request that courts have recognized will preclude low-income and other vulnerable persons from obtaining relief. Plaintiffs' Memorandum, Doc. 15 at 14-15.

---

[6] Finally, Defendant claims that the harms detailed in the declarations is caused by the pandemic and not the City's policy. Doc 27, Response at 14-15. The court correctly rejected this precise argument in *Oakley*, 2020 WL 3268661 at * 16-17.

Defendant has not even attempted to address the clear authority cited by Plaintiffs. which establish that the Court can and should waive any bond requirement in this case.

Because Plaintiffs have been impacted by the COVID-19 pandemic and seek only injunctive and declaratory relief to vindicate their federal statutory and constitutional rights, this case implicates the public interest and the balance of hardships tips sharply in favor of Plaintiffs. Therefore, this Court should not require Plaintiffs to give security.

## CONCLUSION

For all the above reasons, this Court should grant Plaintiffs a preliminary injunction. Plaintiffs do not agree to Defendant's suggestion in Doc. 27, Response at 14, footnote 6, to consolidate the preliminary injunction with a trial on the merits under Rule 65(a)(2).

Respectfully submitted this 12th day of August 2020.

ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST

WILLIAM E. MORRIS INSTITUTE FOR JUSTICE

By  /s/Ellen Sue Katz
Ellen Sue Katz
William E. Morris Institute for Justice
3707 North Seventh Street, Suite 220
Phoenix, Arizona 85014-5095

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of August 2020, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal to the following CM/ECF Registrants:

Mary R. O'Grady
Emma J. Cone-Roddy
Osborn Maledon, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
mogrady@omlaw.com
econe-roddy@omlaw.com

Cris Meyer, City Attorney
Les S. Tuskai, Assistant Chief Counsel
Office of the City Attorney
200 West Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
cris.meyer@phoenix.gov
les.tuskai@phoenix.gov

Attorneys for Defendant

/s/ Ellen Sue Katz