**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Poder in Action, et al., | No. CV-20-01429-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Phoenix, | |
| Defendant. | |

Several months ago, the Court issued a declaratory judgment in favor of Plaintiffs Poder in Action, the Arizona Dream Act Coalition, and Aurora Galan Mejia (collectively, "Plaintiffs"), declaring that federal law preempted Defendant City of Phoenix's ("the City") attempt to impose immigration-based eligibility restrictions as part of a municipal housing assistance program that relied on federal funds. (Doc. 95.) Now pending before the Court is Plaintiffs' motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988. (Docs. 106, 107.) The City opposes Plaintiffs' motion on the ground that § 1988 doesn't authorize attorneys' fees for preemption claims. (Doc. 110.) As explained below, the City is correct. Plaintiffs' motion is therefore denied.

**BACKGROUND**

I.   The City's Exclusion Of Certain Aliens From Its Housing Assistance Program

In March 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") came into effect. Among other things, the CARES Act allocated $150 billion to state, local, and tribal governments to assist those entities in covering "necessary

expenditures incurred due to the public health emergency" arising from the COVID-19 pandemic. *See* 42 U.S.C. § 801(d). This $150 billion allocation is known as the Coronavirus Relief Fund ("CRF").

The City of Phoenix, which received an allocation of CRF funds, chose to use $25.7 million of that money to create the COVID-19 Emergency Utility Rent and Mortgage Assistance Program (the "Program"). The purpose of the Program is "to assist Phoenix residents affected by the COVID-19 emergency . . . by providing aid to eligible Phoenix residents for utility bills (water, electric and/or gas), mortgage and rental obligations." (Doc. 24-1 at 2.)

When formulating the Program's eligibility criteria, the City consulted the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), a federal statute enacted in 1996. *See* 8 U.S.C. § 1611. Under PRWORA, "an alien who is not a qualified alien" is ineligible to receive any "federal public benefit" unless certain exceptions apply. The City concluded that the distribution of CRF funds via the Program constituted a "federal public benefit" and further concluded that none of PRWORA's exceptions were applicable. Thus, the City determined that it was required, as a matter of federal law, to require applicants to the Program to "provide proof of qualified legal status in the U.S." (Doc. 24-1 at 19.) As a practical matter, this excluded many Phoenix residents.

II. Plaintiffs' Legal Theories

On July 20, 2020, Plaintiffs filed suit to "stop the City" from "imposing restrictions based on immigration status for persons to participate in the City's COVID-19 emergency housing program." (Doc. 1 ¶ 1.) In the operative complaint, Plaintiffs alleged that "Congress in establishing the CARES Act Coronavirus Relief Fund did not incorporate any limitations for the use of these funds based on immigration status" and that the City had "unlawfully restricted access to participation in the program and access to the emergency funds in violation of federal law." (Doc. 24 ¶¶ 5, 7.) Plaintiffs requested that the Court "declare the City's immigrant eligibility requirements for the emergency housing assistance under the CARES Act unlawful and enjoin the requirements." (*Id.* ¶ 8.)

Plaintiffs alleged that their "action for declaratory, injunctive relief, and other appropriate relief [was] authorized by 28 U.S.C. §§ 1651 [writs], 2201 [declaratory judgment] and 2202 [further relief]." (*Id.* ¶ 10.)

Concerning the CARES Act, Plaintiffs alleged that "[n]o federal law limits the eligibility for these services based on immigration status." (*Id.* ¶ 31.) Concerning PRWORA, Plaintiffs alleged that "PRWORA does not apply to the CARES Act Coronavirus Relief Fund emergency assistance" because that program falls outside the definition of a "federal public benefit." (*Id.* ¶¶ 34-38.) Plaintiffs elaborated that, because the CRF was "established in response to an unprecedented national emergency and public health crisis created by the COVID-19 pandemic," the CRF was "exempt from [PRWORA's] restrictions." (*Id.* ¶ 39.) Alternatively, Plaintiffs alleged that the Program fell within PRWORA's "short-term, in-kind emergency disaster relief" statutory exemption (*id.* ¶¶ 40-43) and/or the PRWORA provision not requiring "nonprofit charitable organization[s] . . . to determine, verify, or otherwise require proof of eligibility" when administering a federal public benefit (*id.* ¶ 44).

Count One asserted a claim for "Violation of Supremacy Clause; 42 U.S.C. § 1983." (*Id.* ¶¶ 60-64.) Plaintiffs alleged that the City's "policy that prohibits certain immigrants from participating in the [CRF] emergency housing assistance program . . . violate[d] the Supremacy Clause." (*Id.* ¶ 62.) Plaintiffs further alleged that the "Supremacy Clause [was] enforceable by Plaintiffs in this Court pursuant to 28 U.S.C. § 1331 [federal question jurisdiction] and pursuant to 42 U.S.C. § 1983." (*Id.* ¶ 63.)

Count Two asserted a claim for "Violation of Federal Fair Housing Act." (*Id.* ¶¶ 65-69.) Onca again, Plaintiffs alleged this claim was "enforceable by Plaintiffs in this Court pursuant to 28 U.S.C. § 1331 and pursuant to 42 U.S.C. § 1983." (*Id.* ¶ 68.)

Plaintiffs' prayer for relief requested, among other things: (1) "a declaratory judgment holding that [the City's] policy of restricting immigrant eligibility to participate in the [Program] . . . is unlawful and invalid and violates the Supremacy Clause and the Federal Fair Housing Act"; (2) "preliminary and permanent injunctions that prohibit [the

City] . . . from implementing or enforcing the City's policy"; and (3) "reasonable attorneys' fees and costs against [the City] pursuant to 42 U.S.C. §§ 1988 and 3613 and any other applicable law." (*Id.* at 18-19.)

III. The Request For Preliminary Injunction

At the outset of this case, Plaintiffs sought a preliminary injunction. (Doc. 14.) Their theory was that the City's "policies and practices of restricting immigrant eligibility for its Coronavirus Relief Fund residential rental, mortgage and utility assistance program . . . [are] a violation of the Supremacy Clause, U.S. Const. Article VI, clause 2." (Doc. 15 at 1.)

During oral argument, the Court asked Plaintiffs' counsel to clarify whether Plaintiffs were asserting a claim directly under PRWORA or whether Plaintiffs were simply arguing that "PRWORA [as] properly interpreted does not preclude the City from allocating these funds to qualified aliens . . . . and [its] choice to do that violates the Supremacy Clause." (Doc. 53 at 17-18.) In response, Plaintiffs' counsel confirmed that Plaintiffs were raising a Supremacy Clause challenge based on "both field and conflict preemption." (*Id.*)

Following oral argument, the Court denied Plaintiffs' motion. (Doc. 40.) Among other things, the Court concluded that Plaintiffs hadn't demonstrated a likelihood of irreparable harm in the absence of preliminary relief because Arizona's governor had issued a pair of executive orders delaying evictions during the pandemic. The Court emphasized, however, that "[t]his outcome should not . . . be interpreted as a sign that Plaintiffs' challenge to the Program will ultimately fail" and recognized that Plaintiffs had established "serious questions going to the merits" of their challenge. To that end, the Court set an accelerated schedule to resolve Plaintiffs' preemption challenge.

IV. The Request for Permanent Injunction And Declaratory Relief

On October 15, 2020, Plaintiffs filed their opening brief, seeking a permanent injunction and a declaratory judgment. (Doc. 64.) Plaintiffs confined their request for relief to Count One and argued they had established a likelihood of success on the merits

- 4 -

of that claim because "[t]he City's Immigrant Restriction Is Preempted by Federal Law." (*Id.* at 14-15.)  Once again, Plaintiffs invoked "field and conflict preemption principles," arguing that Congress had, through its enactment of the CARES Act and PRWORA, created a "'pervasive' regulatory framework concerning when immigrants are eligible for federally funded assistance" that evinced an "intent to displace state law" and "left no room for states to make their own decisions on immigrant eligibility or to set different eligibility requirements when they are using federal funds."  (*Id.*)

After full briefing and oral argument, the Court held that the City was "not required by PRWORA to exclude unqualified aliens from participating in the Program (because the Program falls within PRWORA's exception for 'short-term, non-cash, in-kind emergency disaster relief'), and that the City's choice to exclude unqualified aliens from the Program [was] therefore preempted by federal law."  (Doc. 95 at 3.)  The Court accordingly concluded that Plaintiffs had "prevailed on their preemption challenge in Count One of the amended complaint."  (*Id.* at 14-15.)  Because the "City acknowledge[d] that Plaintiffs would be entitled to declaratory relief if they prevailed on the merits on Count One," the Court granted Plaintiffs' request for a declaratory judgment.  (*Id.* at 15.)

In its discretion, however, the Court declined to issue a permanent injunction.  (*Id.* at 15-16.)  The City had "consistently asserted that its decision to exclude unqualified aliens from the Program was based solely on its interpretation of PRWORA, as opposed to a policy decision" and had "indicated that it [would] begin allowing unqualified aliens to participate in the Program upon the issuance of the declaratory judgment."  (*Id.* at 16.)  The Court noted that "[i]njunctions are extraordinary remedies and . . . such an extraordinary remedy [was] unnecessary under these circumstances."  (*Id.*)

**DISCUSSION**

I.   The Parties' Arguments

Plaintiffs move for at least $565,033 in attorneys' fees and costs pursuant to 42 U.S.C. § 1988. (Docs. 106.)  Plaintiffs' supporting memorandum addresses their eligibility for fees under § 1988 in only cursory fashion.  (Doc. 107 at 3.)  Most of the memorandum

seeks to defend the size of the fee request. (*Id.* at 4-11.)

The City responds that fee awards are not available under § 1988 for preemption challenges. (Doc. 110 at 2-5.) The City argues that Plaintiffs "did not prevail on a claim under § 1983" but instead "on a claim for declaratory judgment under the Supremacy Clause." (*Id.* at 3.) Because a "preemption claim under the Supremacy Clause is not a claim to vindicate an important constitutional or federal right under § 1983," it argues, Plaintiffs cannot obtain fees under § 1988. (*Id.*) The City notes that Plaintiffs did not argue that "PRWORA confers an enforceable right on unqualified aliens to access this type of federal funding" and that "their Complaint cites the Supremacy Clause itself as the enforceable right they sought to vindicate in Count I," but "Count I asserted no rights based on PRWORA." (*Id.* at 4-5.)

Plaintiffs argue in reply that, to "come within § 1983, [they] must show that [PRWORA] and specifically, the 'short-term, non-cash, in-kind emergency disaster relief' mandatory exception creates a privately enforceable right." (Doc. 113 at 1.) They argue that the City "does not contest that the PRWORA exception creates enforceable rights or that Plaintiffs were the intended recipients of those rights" but instead "claims that Plaintiffs were required to but did not plead that PRWORA provides an enforceable right under § 1983," which they characterize as elevating "form over substance." (*Id.*) Plaintiffs note that, in their prayer for relief, they requested "to represent a class of immigrants who are not qualified immigrants under PRWORA," a "declaratory judgment that [the City's] restrictions on immigrant eligibility is unlawful under PRWORA," and a "preliminary injunction to enjoin [the City] from restricting immigrant eligibility under PRWORA." (*Id.*) Plaintiffs contend they were not required "to plead explicitly that the right is enforceable." (*Id.*) Plaintiffs also argue that PRWORA creates an enforceable right under § 1983 and that they've "sought to vindicate the *individual rights* of those immigrants that the [City] refused to let apply for the emergency housing fund." (*Id.* at 2-4.)

…

…

- 6 -

II.     Analysis

Plaintiffs' fee request is governed by 42 U.S.C. § 1988, which provides that in "any action or proceeding to enforce a provision of [§ 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Section 1983, in turn, authorizes a private suit against a person who, under color of law, causes a deprivation of "any rights, privileges, or immunities secured by the Constitution and laws."

Section 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently secured by the Constitution and laws of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (internal quotation marks omitted).  "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 617 (1979). *See also Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021) ("In fact, § 1983 contains no substantive rights.  It merely provides a vehicle for vindicating rights found in the Constitution or another federal law. . . .  So our 'threshold inquiry' under § 1983 must always be to identify the specific . . . right at issue.") (internal quotation marks omitted).  Thus, the threshold question here, when evaluating Plaintiffs' eligibility for attorneys' fees and costs under § 1988, is whether the claim on which they prevailed was a § 1983 claim premised on a violation of an individual right independently secured by the Constitution and laws of the United States.

The sole claim on which Plaintiffs prevailed was Count One, which they characterized in the operative complaint as a claim for "Violation of Supremacy Clause; 42 U.S.C. § 1983." (Doc. 24 at 17.)  Although this nomenclature might, at first blush, suggest that Plaintiffs are eligible for fees under § 1988—after all, they asserted and prevailed on what was labeled as a § 1983 claim—the analysis becomes more complicated on closer examination.  This is because the "Supremacy Clause, of its own force, does not create rights enforceable under § 1983." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989) (footnote omitted).  It is "not a source of any federal rights" but merely "secure[s] federal rights by according them priority whenever they come in conflict

with state law." *Id.* (alteration in original) (internal quotation marks omitted). As a result, the Ninth Circuit has repeatedly rejected claims for attorneys' fees under § 1988 in cases involving preemption challenges.

For example, in *Howard v. City of Burlingame*, 937 F.2d 1376 (9th Cir. 1991), the plaintiff filed a lawsuit "claiming that the City's ordinance . . . [was] preempted" by a ruling of the Federal Communications Commission ("FCC"). *Id.* at 1378. The plaintiff also asserted that the City had violated his First Amendment rights and § 1983. *Id.* After the district court held that the ordinance was preempted by the FCC's ruling, the plaintiff "moved to reinstate his § 1983 claim in an attempt to secure attorney fees" under § 1988. *Id.* The district court "denied the motion, reasoning that no statutory or constitutional rights were violated, and that [the plaintiff's] earlier victory rested on the supremacy clause which does not guarantee individual rights." *Id.* The Ninth Circuit agreed, holding that the plaintiff's "preemption victory below did not vest him with any enforceable rights under 42 U.S.C. § 1983" because the "supremacy clause merely safeguards federal interests against state infringement, and operates to preempt state regulatory action without creating individual rights." *Id.* at 1380.

Similarly, in *Segundo v. City of Rancho Mirage*, 813 F.2d 1387 (9th Cir. 1987), which involved a dispute over whether "the rent control ordinances at issue [are] preempted by federal law," the Ninth Circuit ruled in the challengers' favor on the merits of their preemption challenge but held they were not entitled to attorneys' fees under § 1988 despite this victory because "preemption of state law under the Supremacy Clause—being grounded not on individual rights but instead on considerations of power—will not support an action under section 1983, and will not, therefore, support a claim for attorneys' fees under section 1988." *Id.* at 1392-94.

And again, in *White Mountain Apache Tribe v. Williams*, 810 F.2d 844 (9th Cir. 1987), Arizona assessed various taxes against the contractual partner of a tribal entity that had been created to harvest timber. *Id.* at 846. The tribe, in turn, brought a preemption challenge, arguing "that the state taxes were preempted because the comprehensive federal

regulatory scheme governing the harvest and sale of tribal timber had occupied the field and because the state taxes would interfere with federal goals and policies." *Id.* at 847. The district court eventually granted a declaratory judgment in the tribe's favor and awarded over $200,000 in attorneys' fees and costs under § 1988 but the Ninth Circuit reversed the fee award. *Id.* at 847-52. Critical to the court's analysis was that "the Tribe did not prevail . . . on a theory that the state had *violated* any of the federal laws or regulations governing logging operations on tribal lands. Rather, the . . . state taxes were preempted because the federal government had pervasively regulated tribal logging operations and because state taxation would interfere with the goals and purposes of the federal regulatory scheme." *Id.* at 847. The court concluded that "preemption of state law under the Supremacy Clause—at least if based on federal occupation of the field or conflict with federal goals—will not support an action under § 1983, and will not, therefore, support a claim of attorney's fees under § 1988." *Id.* at 850.[1]

So, too, here. Count One was a preemption claim based explicitly on considerations of power between Congress (which, in Plaintiffs' words, had enacted a "'pervasive' regulatory framework concerning when immigrants are eligible for federally funded assistance" that evinced an "intent to displace state law" and "left no room for states to make their own decisions on immigrant eligibility or to set different eligibility requirements when they are using federal funds") and the City (which, according to Plaintiffs, had "undercut the federal objective to ensure that emergency housing disaster relief is available without regard to immigration status"). (Doc. 64 at 14-15.) These are quintessential arguments about the balance between state and federal power, as opposed to arguments about individual statutory or constitutional rights, that cannot support an award

---

[1] *See also Central Valley Chrysler-Jeep, Inc. v. Goldstene*, 2008 WL 4443103, *2 (E.D. Cal. 2008) ("Because Plaintiff's claim for injunctive relief under the Clean Air Act is based on express conflict preemption, the court finds Plaintiffs' claim of attorney's fees pursuant to 42 U.S.C. § 1988 is clearly precluded by the Ninth Circuit's decision in *White Mountain Apache Tribe*."); *R.J. Reynolds Tobacco Co. v. McKenna*, 2006 WL 3289624, *1 (W.D. Wash. 2006) (denying request for over $232,000 in attorneys' fees under § 1988, in action where plaintiff prevailed on preemption challenge to state law, because "a preemption claim is not a colorable § 1983 action that would allow for recovery of attorneys' fees under § 1988").

- 9 -

of § 1988 attorneys' fees under settled Ninth Circuit law.[2]

Plaintiffs seek to avoid this conclusion by arguing that Count One was actually a claim under PRWOWA, which purportedly "creates a privately enforceable right." (Doc. 113 at 1-3.) Plaintiffs go so far as to contend that the City "violated PRWOWA when it refused to allow certain immigrants to apply for the housing funds when PRWORA requires the exception." (*Id.* at 3.) But this is not the theory that Plaintiffs advanced and prevailed upon during the earlier proceedings. Indeed, in their preliminary injunction briefing, Plaintiffs argued that PRWORA did not apply at all. (*See, e.g.*, Doc. 32 at 1-2 ["The immigration restrictions in [PRWORA] do not apply here."].) During oral argument on their preliminary injunction request, Plaintiffs then confirmed (upon questioning by the Court) that their theory was that "PRWORA [as] properly interpreted does not preclude the City from allocating these funds to qualified aliens . . . and [the City's] choice to do that violates the Supremacy Clause." (Doc. 53 at 17-18.) In other words, Plaintiffs made clear that they weren't asserting a claim directly under PRWORA—instead, they were proffering PRWORA as one component of the comprehensive federal regulatory framework that gave rise to their field preemption claim. (Doc. 64 at 14 ["The City's restrictions also fall under the field preemption principles. The CARES Act and PRWORA provide a 'pervasive' regulatory framework concerning when immigrants are eligible for federally funded assistance."].) This was the only theory the Court accepted when issuing declaratory relief in Plaintiffs' favor. (Doc. 95 at 14-15 ["It isn't enough for Plaintiffs to show that the City's decision to include immigration-based eligibility restrictions in the Program was a permissive act not required by federal law. To prevail on their challenge, Plaintiffs must go further and identify a legal theory as to why the City's inclusion of such restrictions was impermissible. In Count One of the amended complaint, which is the sole claim that Plaintiffs have chosen to pursue, Plaintiffs raise a preemption challenge . . . . The City

---

[2] In their reply, Plaintiffs argue that a preemption claim could potentially form the basis for a § 1983 claim (and, thus, § 1988 fees) if it sought to vindicate individual rights, rather than seeking to enforce the proper balance of power between dual sovereigns. (Doc. 113 at 4-5.) The Court need not reach this possibility because, here, Plaintiffs' preemption argument was explicitly based on considerations of power and federalism.

doesn't . . . attempt to argue that the Program could survive a preemption challenge even if its eligibility restrictions weren't mandated by PRWORA. Accordingly, the Court concludes that Plaintiffs have prevailed on their preemption challenge in Count One of the amended complaint."].)

Because Plaintiffs' prevailing claim was a preemption claim "grounded not on individual rights but instead on considerations of power," *Segundo,* 813 F.2d at 1394, Plaintiffs are not eligible to recover their attorneys' fees and costs under § 1988. Although the Court recognizes this is not the outcome Plaintiffs hoped for, in a case that has many of the hallmarks of successful public interest litigation, it is the result compelled by the statutory language and applicable Supreme Court and Ninth Circuit precedent.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for attorneys' fees (Doc. 106) is **denied**.

Dated this 22nd day of April, 2021.

Dominic W. Lanza
United States District Judge